# Commonwealth *v.* Penrose, Appellant.

*Criminal law—Trial—Charge—Excerpts from charge—Assignments of error.*

After a trial and conviction in a criminal case, the judgment will not be reversed on assignments of error based on alleged erroneous excerpts from the charge where it appears from the context of the charge in immediate connection with the excerpts assigned as error, that the alleged errors were without foundation.

*Criminal law—Trial—Charge of court.*

The extent to which a trial judge ought to go in reviewing, analyzing and commenting on testimony depends very largely upon the circumstances of the case, and, to some extent, upon the line of argument pursued by counsel in addressing the jury. Generally it must be left to his sound discretion. It is only in exceptional cases, as, for example, where it plainly appears that the charge is so inadequate in this regard as to be misleading, or where by indirection it withdraws the attention of the jury from material issues or evidence or from matters entering as necessary elements into the decision of the question at issue, or where its tendency as a whole is to unduly magnify the importance of the proofs introduced by one party and to belittle those introduced by the other party, that the court will be reversed upon a general exception of this nature.

*Criminal law—Jury—Aliens—Alienage of jurymen—New trial.*

After trial and conviction in a criminal case the court commits no error in refusing a new trial on the ground of the alienage of one of the jurymen, where it appears that the juryman was a resident of the county, was sober, intelligent and a judicious person, and that no objection was made at the trial as to his alienage.

Argued Oct. 4, 1904.    Appeal, No. 25, April T., 1905, by defendant, from judgment of Q. S. Allegheny Co., Sept. T., 1903, No. 796, on verdict of guilty in case of Commonwealth v. N. Penrose. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER and MORRISON, JJ. Affirmed.

Indictment for abortion.     Before COLLIER, P. J.

The court charged in part as follows:

[This is an important case.   It is a high grade of felony, and if a person commits it, there is not any ordinary punishment too great for him. [3]

But for that very reason, the evidence ought to be examined with great care.

I will read the act to you—though it has been read to you; it will help you to understand it:

"If any person shall unlawfully administer to any woman pregnant or quick with child," (that is, pregnant with child or quick with child), " or supposed or believed to be pregnant or quick with child—"

I will read it over.   This book has got very dirty and it is difficult to read.

"If any person shall unlawfully administer to any woman pregnant or quick with child, or supposed and believed to be pregnant or quick with child, any drug or poison or other substance whatsoever, or shall unlawfully use any instrument, or other means whatsoever with intent," (with intent), " to procure the miscarriage of such woman, and such woman, or any child with which she may be quick, shall die in consequence of either of said unlawful acts, the person so offending shall be guilty of a felony, and shall be sentenced to pay a fine not exceeding $500 and to undergo an imprisonment by separate and solitary confinement at labor, not exceeding seven years."

You will observe, gentlemen, by that, that as far as this act is concerned, it has two branches; but as far this case is concerned, it has one.

In the first place, gentlemen, the defendant is charged with believing or knowing that this woman, when she came to him, was pregnant.   That he believed it, or knew it either, it makes no difference; or if he had good reason to believe it, or believed it, then he had no right to commit an abortion. He is charged, gentlemen with believing that she was pregnant, and, with that belief, giving her first drugs, and afterwards using some instrument upon her twice, which produced a miscarriage and caused the woman's death.   That, in short, is the charge in this case.

The question of the quick child does not arise in it, because the child was not quick; it was only a fœtus, and a miscarriage of that.] [1]

[Bearing that in mind, gentlemen, you will examine the evidence. The first thing concerned is, was this woman pregnant? That is the first question. Upon that you have the testimony given by the commonwealth, and particularly that of Dr. Hayes, who said that when he came to examine her she was the victim of an abortion; that is, she had had an abortion. That means that she had been pregnant. But you must find beyond a reasonable doubt that she was pregnant.] [2]

Then, if she was pregnant, did she die from that by reason of an abortion? You have heard all the testimony on that, and you will have to say as to that, whether an abortion of some kind caused her death. Not from other causes, but because of an abortion, that produced her death. You will examine that, weigh the evidence carefully, and say whether that was so. Because you must find all these things beyond a reasonable doubt.

Then, if you should find, gentlemen, that she was pregnant, that she had an abortion, and that the abortion produced her death, then you come, gentlemen, to the most vital part of the whole of it: Is the defendant the agent that produced that abortion? Did he believe that this woman was pregnant, and did he give her drugs and did he use instruments upon her that caused the abortion or miscarrying, as it is used in the act, and was that miscarriage the cause of the woman's death?

These are the questions before you, and it is not worth while to bother yourselves about other matters. Now take the case and examine it. And I will not go over the evidence in detail, but I will call your attention to it.

In the first place, probably you will find—but that is for you to find beyond a reasonable doubt—that this girl was pregnant. Mind you, that is for you. I do not direct you on that point of the case. There are cases where it is the duty of the court to tell the jury what the evidence is; but in a case of this kind it is entirely the province of the jury to find the facts beyond a reasonable doubt.

I will say that probably you will find that she was pregnant.

Then you will probably find that she had an abortion. And as to that, also, gentlemen, you are not bound by what the court says at all. You will have to find it for yourselves.

[You will come, then, if that is the case, and you further find that that abortion caused her death, you come to the question, was this defendant guilty of it? Did he, when she came there, believe from what he examined and what she told him, that she was in a family way, that is, that she was pregnant? And believing that, did he give her these drugs—because he did give her drugs—and did he use instruments, did he use one or the other, either or both, with the intent on his part to relieve her and produce an abortion, that is, to relieve her pregnancy? If he did that, gentlemen, he is guilty. And any man who would do that—a professional man, too, who is educated—a professional man who is or ought to be educated to a high standard and knows the terrible crime he commits upon the community, ought to be punished.] [3]

: But, gentlemen, you ought to be satisfied clearly, clearly beyond a reasonable doubt, that he is the guilty agent. For this reason : It is so easy, gentlemen, so easy in the case of a physician, when there is nobody by, to be at the mercy of anyone who accuses him. Probably more so than an ordinary person, because of the peculiar confidential relations between a patient and their physician, so I caution you to look at it carefully and be satisfied beyond a reasonable doubt that he is the guilty agent.

[Now, gentlemen, as to the testimony upon that point. The commonwealth's case depends almost solely and entirely upon admissions of the defendant. No witness, outside of the admissions of the defendant, was present to tell us anything about it, on the part of the commonwealth. The commonwealth alleges, gentlemen, that when the defendant was taken to the bedside of this suffering girl, when she was in great agony, that she accused him then and there of being the guilty agent; that she said that he used instruments upon her; that he was the cause of it; and that he admitted that that was the case; that he had used the instruments.

: Now that, gentlemen, is evidence for you to consider, and consider carefully, because when a person is accused in the presence of people of doing a certain thing, and makes no reply

when he ought to reply, or admits that that is a fact, the fact that he did use instruments, that is evidence always against the person against whom the evidence is given.] [4]

Again, you will say whether in all that conversation he admitted at any time that he used any of these instruments for the purpose and with the intent of committing an abortion, or whether he was referring to the electrical instruments that he said he used. All that you will consider. When evidence is given against a person, you consider all the facts in it, everything in connection with it, to say what weight you will give it.

On the defendant's side, gentlemen, the whole case of the prosecution is denied. It is denied by the defendant, and his evidence is for you, just the same as a witness on the part of the commonwealth. His evidence is that he denies that he knew that this girl was in a family way at all, or that he knew that she was pregnant at all. But as a good physician, when she came, having a suspicion—because sometimes girls do come for that purpose—he made an examination; and from what was told him about the typhoid fever and the other things he came to the conclusion that the menstrual changes were delayed; that is, restrained menstruation. Her monthly courses did not come on properly, and he says that he gave her the usual, ordinary pills for that purpose. And when she came back complaining that it had not restored her courses, he used what is known in the medical profession as electrical treatment. And he used it on two occasions for that purpose and that purpose only. And that ordinarily that treatment would not have anything to do with the producing of an abortion at all.

Now, that is the statement upon the part of the defense. You will weigh it, and weigh it with all the circumstances surrounding the defendant's story and the circumstances surrounding the prosecutor's story. And if you find that the commonwealth's evidence is sufficient to satisfy you, that he is the guilty agent, if you find that she was pregnant and that there was an abortion and that that abortion killed her, and that he is the guilty agent who did it, believing that she was pregnant, using drugs or using instruments upon her for the purpose of producing a miscarriage, you will find him guilty as he stands

indicted.   Otherwise, if you have a reasonable doubt about it; if your minds rest clearly satisfied that you are right and that you are not making a mistake, then you will convict him; otherwise you ought to acquit him, because every man is entitled to that.

Then there is a last consideration, and, gentlemen, in this case that is important.   Good character, gentlemen, is always allowed to be given in any criminal case.   And good character opposite to the character of the offense charged is the kind of a character that there is weight in.   If a man is charged with theft, character for honesty is always important.   If a man is charged with doing an offense of this kind, his character or reputation among his neighbors, that he has always been regarded as an honest physician, never had anything against him as an honest man, that evidence is always important to be given.   And, indeed, our Supreme Court says that in a proper case a jury may acquit on good character alone.

[You have heard the testimony of good character, and you have heard what the first witness said.   The first witness I understood to say that his character was good, but that he had at one time heard something about him, some talk about him being in the abortion business.]  [5]   The other witnesses all said that they had never heard anything against him, that he is an honest man and a trusted doctor, and there never was a breath against him that they ever heard.   These are people living, his neighbors, living close around.   All these things are for you, gentlemen, and not for the court.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were (1–5) portions of charge as above, quoting them;   (6) that the charge as a whole was inadequate, one-sided and misleading;   and (10) in overruling defendant's motion for a new trial.

*M. L. Thompson,* with him *H. M. Davidson,* for appellant.— It is error for the court to assume that a crime has been committed : Commonwealth v. Johnston, 5 Pa. Superior Ct. 585; Com. v. Switzer, 134 Pa. 383.

An erroneous statement of the evidence upon the pivotal

fact in the case in the charge to the jury is a cause of reversal: Com. v. Cleary, 135 Pa. 64; Heine v. Com., 91 Pa. 145.

The defendant contends that the charge taken as a whole was inadequate, one-sided and misleading: Com v. Goldberg, 4 Pa. Superior Ct. 142; Larzelere v. Tiel & Tooley, 3 Pa. Superior Ct. 109; Phila. Trust, etc., Co. v. P. & E. R. R. Co., 177 Pa. 38; Herrington v. Guernsey, 177 Pa. 175; Lerch v. Bard, 177 Pa. 197; Minick v. Gring, 1 Pa. Superior Ct. 484.

The alienage of a juryman was ground for a new trial: Schumaker v. Wisconsin, 5 Wisconsin, 324; Com. v. Spring, 5 Clark, 238; Briggs v. Town of Georgia, 15 Vt. 61; Fines v. Norton, Cro. Car. 278.

No appearance or paper-book for appellee.

OPINION BY RICE, P. J., January 17, 1905:

The defendant was indicted and convicted under the 87th section of the Act of March 31, 1860, P. L. 382. The learned trial judge, first read the section to the jury, and in doing so emphasised by repetition its requirement as to intent, and then made the comments which are subject of the first assignment of error. His purpose evidently was to eliminate any question as to the female being quick with child, and to direct and confine the attention of the jury to the essential elements of the specific charge, so far as it was supported by evidence, which the defendant was called upon to meet. The suggestion that the judge assumed that the defendant was guilty of the crime of abortion, or had procured an abortion, is not warranted by anything that he said in this or any other portion of his charge. The instructions were appropriate for the purpose for which they were given and were neither erroneous in point of law, nor inadequate, nor misleading.

It is argued in support of the second assignment of error that the court put an unwarranted construction upon the testimony of Dr. Hayes, a witness called by the commonwealth. True, the witness did not say in so many words that "she was the victim of an abortion." But any possible prejudical effect which might have resulted, if the statement of the learned judge giving this as the purport of his testimony had not been qualified, was averted by the explanatory remark which immediately

.followed, namely, "that is, she had an abortion." With this explanation of what he meant by the expressions "victim of an abortion," the summary he gave of the testimony was accurate.

.The third assignment is based on two excerpts from the charge, the first being at the beginning and the other two pages or more further on. Passing the obvious objection to this mode of assigning errors in a charge, we hold that neither of the excerpts, when read with the. context which qualifies and explains it, can be justly criticized as prejudicial to the defendant. Comments on the heinousness of the crime charged in the indictment and the justice of the severe punishment which the law attaches to it, so worded or elaborated as to excite abhorrence which is likely to extend beyond the crime to the prisoner himself, are objectionable and ought to be avoided. But these comments were not so intended and could have had no such effect upon the minds of the jurors. The clause of the charge which is last quoted in this assignment does not fully express the idea which the judge intended to convey at that time; for he followed it immediately with this caution : "But, gentlemen, you ought to be satisfied clearly, clearly beyond a reasonable doubt, that he is the guilty agent. For this reason : It is so easy, gentlemen, so easy in the case of a physician, when there is nobody by, to be at the mercy of anyone who accuses him. Probably more so than an ordinary person, because of the peculiar confidential relations between a patient and their physician, so I caution you to look at it carefully and be satisfied beyond a reasonable doubt that he is the guilty agent." The instructions complained of taken as they should be, in connection with those last quoted were calculated, and obviously were intended, not only to impress upon the jury a sense of the gravity of the issue they were sworn to determine, and of their duty to convict if they were convinced beyond a reasonable doubt of the guilt of the accused, but also to make them cautious in considering the evidence upon which the commonwealth relied, as well as in rendering a verdict which would subject the accused to such severe punishment.

The specific objection urged against the portion of the charge quoted in the fourth assignment is, not that the judge did not state correctly the substance of the commonwealth's

testimony as to what occurred when the defendant was brought, after his arrest, into the presence of the female he had treated, but that he did not call the attention of the jury to the defendant's denial of the charges and admissions alleged to have been made at that time.     An examination of his testimony upon this branch of the case shows that what he denied was, that she charged him with having used instruments upon her, he claiming that the words she used were, "gave her treatment."     With this qualification he testified that he then and there admitted that her statement was substantially correct. This discrepancy between his testimony and that of the commonwealth's witnesses was not overlooked by the judge but was called to the attention of the jury by the following language : " Again, you will say whether in all that conversation he admitted at any time that he used any of these instruments for the purpose and with the intent of committing an abortion, or whether he was referring to the electrical instruments that he said he used.     All that you will consider.     When evidence is given against a person, you consider all the facts in it, everything in connection with it, to say what weight you will give it." This was followed by a concise, but nevertheless adequate and fair summary of the salient points of the defense and of the defendant's testimony supporting it.     The instructions complained of in the fourth assignment, construed in the light of what followed, do not seem to us to be open to the criticism that they prominently presented the testimony of the commonwealth as to the charges and admissions alleged to have been made on the occasion referred to while belittling that of the defendant upon the same subject.     This assignment is not sustained.

The general instructions as to the pertinency and effect of evidence of the good reputation of the accused were full and fair and as favorable to him as he had a right to ask.     These were followed by a summary of the testimony of the defendant's witnesses, upon that subject, in which the court said 'that all of the witnesses, excepting the first, " said that they never heard anything against him, that he is an honest man and a trusted doctor, and there never was a breath against him that they ever heard.     These are people living, his neighbors, living close around."     Speaking of the testimony of the first witness the

learned judge said: " The first witness I understood to say that his character was good, but that he had at one time heard something about him, some talk about him being in the abortion business." This last clause of the charge is severed from the context and made the subject of the fifth assignment of error. The specific complaint is that the testimony of the witness was misquoted. The witness was asked : " Isn't it commonly reported in Allegheny that he is an abortion doctor, that that is his principal business ? " To this he at first gave a negative answer, but being further pressed he said that he had not heard it " generally " talked of. Then appear this question and answer : " You have heard it talked of that he does that sort of business ? A. Seems to me some years ago I heard something of this kind." True, the witness did not use the word " abortion," but his answers, read in the light of the questions to which they were given, clearly warranted the judge's statement of the substance and purport of his testimony.

In the sixth assignment complaint is made that the charge as a whole was inadequate, one-sided and misleading. " As we have had occasion to remark in recent cases the extent to which a trial judge ought to go in reviewing, analyzing and commenting on testimony depends very largely upon the circumstances of the case, and, to some extent, upon the line of argument pursued by counsel in addressing the jury. Generally it must be left to his sound discretion. It is only in exceptional cases, as for example, where it plainly appears that the charge is so inadequate in this regard as to be misleading, or where by indirection it withdraws the attention of the jury from material issues or evidence, or from matters entering as necessary elements into the decision of the question at issue, or where its tendency as a whole is to unduly magnify the importance of the proofs introduced by one party and to belittle those introduced by the other party, that the court will be reversed upon a general exception of this nature : " Blank v. Barnhart, 17 Pa. Superior Ct. 214. See also Commonwealth v. Kaiser, 184 Pa. 493 ; Commonwealth v. Winkelman, 12 Pa. Superior Ct. 497, 516 ; Commonwealth v. Wertheimer, 23 Pa. Superior Ct. 192. The very earnest argument of defendant's counsel has failed to convince us that this is such a case. On the contrary, our conclusion upon the whole case is, that there

was ample evidence to warrant the submission of the question
of the guilt of the defendant to the jury, and that it was sub-
mitted in an impartial charge˘ in which the law applicable to
the issue was clearly and correctly stated, and the claims of
the commonwealth and the accused were fairly presented, " with
enough reference to the items of evidence to assist the jury in
recalling it as a substantial whole, and to appreciate its bear-
ing."

The only remaining question that need be noticed is that
which relates to the refusal of the court to grant a new trial,
upon the ground, not discovered until after the trial, that one
of the jurors was an alien. It is to be observed in this connec-
tion that (1) no question is raised as to his being a resident
of the county, or as to his being a sober, intelligent and ju-
dicious person, or as to his being the identical person who was
described as " Thomas McCormick, laborer, 35th ward, Pitts-
burg " in the panel of jurors drawn and summoned for that
term, and that (2) when he was drawn as a juror in the defend-
ant's case he was accepted and sworn without being interrogated
by counsel on either side as to his qualifications.    There was
no imposition, no intentional withholding of information which
the defendant was entitled to.    The disqualification of the
juror was a purely legal one which did not at all tend to im-
peach his capacity, integrity or impartiality.    It would have been
disclosed, if he had been interrogated at the time he was sworn,
but the defendant voluntarily omitted to avail himself of the
means at his hand for informing himself and the court upon
the subject.    He preferred, perhaps, to hold them in reserve to
be used in the event of an adverse verdict, as he had a perfect
right to do, if the position of his counsel is correct.    We think,
however, that their position is not tenable.    In Hollingsworth
v. Duane, 4 Dall. 353, as the report of the case goes, " the court
after a long advisement upon the subject, seemed to think
that alienage might have been a cause of challenge before the
juror was sworn ; but upon an extensive review of the author-
ities they decided that advantage could not be taken of it after
verdict."    In Traviss v. Commonwealth, 106 Pa. 597, it was
held not to be reversible error to refuse a new trial, which was
asked for upon the ground that one of the jurors was re-
lated to the person alleged in the indictment to have been

murdered, a fact not known to the defendant or his counsel until after verdict.  After showing that under the special circumstances the relationship was not actually prejudicial to the defendant, Mr. Justice STERRETT said: " If the fact of relationship had been known and brought to the attention of the court before the juror was sworn, he doubtless would have been excused or successfully challenged for cause; but it was unknown to the court as well as the counsel on both sides, and the juror, after being examined in the usual manner, was accepted and sworn.  The time to challenge is before the juror is sworn; if not exercised then, the right is waived.  That waiver may be relieved against when the party affected has been intentionally misled or deceived by the juror or the opposite party; but it is not even pretended there was anything of the kind in this case."  Neither is anything of that kind pretended here.  In Commonwealth v. Thompson, 4 Phila. 215, it was held, that although the alienage of a juror is good cause of challenge the court will not set aside the verdict of the jury in a criminal case on that ground, where the trial has been allowed to proceed without any objection having been made to the juror's disqualification, even where there is evidence, from the affidavits of the juror and the prisoner, that the fact of alienage was not disclosed by the one, nor known to the other, before the trial.  This decision is not binding upon us, it is true; we cite the case because the reasoning of Judge ALLISON in support of the above conclusion commends itself to our judgment as a sound and convincing exposition of the law upon the subject.  The decisions of the courts of the other states upon the subject are not harmonious, but the weight of authority seems to be in favor of the conclusion we have reached, namely, that under the circumstances to which we have alluded the court below wisely exercised the discretion committed to it in holding the alienage of the juror to be an insufficient reason for setting aside the verdict.  A collection of many of the decisions will be found in State v. Pickett, 103 Iowa, 714 (73 N. W. Repr. 346).

All the assignments are overruled; the judgment is affirmed, and it is ordered that the appellant appear in the court below and by said court be committed for the term of his imprisonment which had not expired at the time this appeal was made a supersedeas.