# Commonwealth *v.* Curry, Appellant.

*Criminal law—Murder—Jurors — Commonwealth's challenge— Withdrawal of juror after being sworn—Judicial discretion—Jeopardy—Acts of March 6, 1901, P. L. 16; July 9, 1901, P. L. 629, and May 14, 1925, P. L. 759—Reasonable doubt—Charge of court— Duty of jury.*

1. Where a juror is sworn, and on the same day an additional person is chosen and qualified, but, before the twelfth man was secured, it is discovered that the first juror had a long criminal career, the Commonwealth has a right to challenge such juror for cause, and this is especially so, where the trial judge states that if the challenge had not been made, he would have withdrawn the juror in the exercise of his judicial discretion.

2. It is a general rule that the court may, during the selection of the jury and before it is completed and sworn, excuse or discharge one of the jurors already accepted.

3. A prisoner is not in jeopardy before the full jury is impaneled and sworn.

4. The Act of March 6, 1901, P. L. 16, as amended by the Act of July 9, 1901, P. L. 629, was not intended to deprive the court of its discretion to permit challenges before the jury as a whole is sworn, if the same becomes necessary.

5. The Act of May 14, 1925, P. L. 759, contemplates, first, a finding of guilt of first degree murder, and, thereafter, the exercise of discretion by the jurors. It does not provide that the jury may fix the death penalty only in case they are convinced beyond reasonable doubt that it is proper. It left to them the duty of determining fairly, under all the proven facts, what is right and just under the circumstances, and it is their discretion which is to be exercised after the guilt is determined.

6. The court cannot charge the jury that if there was a reasonable doubt as to the justice of imposing the death penalty, a sentence of life imprisonment should be directed by them.

Argued November 22, 1926. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 310, Jan. T., 1926, by defendant, from judgment of O. & T. Phila. Co., May T., 1926, No. 258, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Joseph Curry, alias Joseph O'Brien. Affirmed.

Indictment for murder. Before Stern, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree with death penalty, on which sentence of death was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, refusal of new trial and judgment, quoting record.

*Henry Stevenson* and *C. Stuart Patterson, Jr.,* with them *Louis McCabe,* for appellant.—On the determination of the penalty to be attached to a verdict of murder in the first degree, if such a verdict be agreed on, de-

fendant is entitled to have resolved in his favor any reasonable doubt, arising from the evidence, in the minds of the jury, which would cause them to hesitate in deciding on the penalty of death.

*Charles Edwin Fox,* District Attorney, with him *Charles I. Thompson,* Assistant District Attorney, for appellee:—The trial court acted within the limits of its discretion in permitting a challenge of juror Shollor: Alexander v. Com., 105 Pa. 1; McFadden v. Com., 23 Pa. 12; Zell v. Com., 94 Pa. 258; Com. v. Marion, 232 Pa. 413.

The doctrine of reasonable doubt plays no part in the jury's statutory right to fix the penalty.

OPINION BY MR. JUSTICE SADLER, December 6, 1926:

The defendant, Curry, was jointly indicted with Bentley, Juliana and Doris for the killing of Harry M. Cooper, a police officer, on May 4th, 1926. He was convicted of murder of the first degree, and sentenced to death. An examination of the record convinces us that all of the essentials of the offense were proved, and, unless some trial error appears, the judgment should be affirmed. The facts surrounding the shooting have been set forth in the opinion filed in Commonwealth v. Bentley, and need not be repeated. It may be observed that the evidence justified the finding that Curry shot the deceased during the course of the retreat from the bank, while riding in the stolen milk wagon. He was responsible for the crime committed, even though the bullet came from the revolver of his accomplice, Bentley, a legal proposition which is discussed in the case of his codefendant, Doris.

Complaint is made of the permission given to the Commonwealth to peremptorily challenge one Shollor, called as a juror. He was accepted after examination on his voir dire, and, following the practice prevailing in Philadelphia County, was immediately sworn as Num-

ber 10. Later, on the same day, an additional person was chosen and qualified. Before the twelfth man was secured, it was discovered that there had been a misapprehension as to the identity of Shollor, and that in fact he was a man with a long criminal record. These facts were disclosed in an examination conducted by the court at side bar. So that a fair and impartial trial might be had, the Commonwealth was permitted to exercise a peremptory challenge, and remove him, the court stating that had it not been made, it would of its own motion have withdrawn the juror in the exercise of judicial discretion: Com. v. Henderson, 242 Pa. 372. To prevent harm coming to defendant, it granted the right to five additional peremptory challenges, the number allotted by law having been exhausted, and also gave leave to dismiss the juror, No. 11, chosen after Shollor, if desired. Exception to this order was overruled, as was a motion made for a withdrawal of a juror, and the correctness of the rulings made is the subject of the first three assignments of error.

The generally recognized rule is that the court may, during the selection of the jury and before it is completed and sworn, excuse or discharge one of the jurors already accepted: 35 C. J. 420. This right has been affirmed by the decisions of our court. In Alexander v. Com., 105 Pa. 1, 9, where a similar situation arose, it was said, in part: "He was not in jeopardy at the time of making the order. The trial begins when the jury is charged with the defendant, and that is at the moment a full jury is impaneled and sworn; he is not in jeopardy before. Up to that point the court may postpone the trial as lawfully at one stage of the proceedings as another. A man is not in peril from the verdict of a jury till the full number are qualified to hearken unto the evidence and make deliverance. Eleven jurors, or eight, can give no verdict: McFadden v. Com., 23 Pa. 12. The practice as to the time of administering the oath to the jurors is not uniform; in some districts each juror is

separately sworn as called and unchallenged, and in others none are sworn until all are selected. In either case the tribunal is unorganized while there are less than twelve, and, until it is organized, for good cause the court may direct the drawing of the jurors to begin anew."

It is urged that this is no longer permissible since the Acts of March 6, 1901 (P. L. 16), as amended July 9, 1901 (P. L. 629), by which the right to stand aside was taken from the Commonwealth, and a fixed number of peremptory challenges given to each party, to be assigned when the juror is called. The purpose of this legislation was clear, and was not intended to deprive the court of its discretion to permit challenges before the jury as a whole is sworn, if the same becomes necessary. Thus, it has been allowed after the juror has been accepted by the State: Com. v. Marion, 232 Pa. 413. Until the twelve have been impaneled and sworn, the defendant is not in jeopardy, and, where good reason is shown, any one may be ordered withdrawn by the court in the exercise of its discretion, as was properly directed in this case.

The remaining assignments, except those directed to the refusal of a new trial, and the judgment entered, relate to the answers to three points of the defendant. Ample and careful instructions had been given to the jury as to the necessity of finding all essential facts beyond a reasonable doubt before a verdict of guilty could be rendered, and this was reaffirmed in answer to the tenth point, when it was said: "As far as the request applies to the evidence or the facts, or inferences from the evidence, in order to determine the ultimate question of the guilt or innocence of the defendant, the point is affirmed."

Due, however, to the statement of counsel that it was desired that the same instruction be given as to the like duty of the jury in the case of conviction, when they came to consider the penalty, the court made the same qualification, as in answer to the 11th and 12th points,

where the request in this respect was specific. The statement of law desired was based on appellant's construction of the Act of May 14, 1925, P. L. 759, which provides that, in case of conviction of murder of the first degree, the prisoner shall be sentenced to suffer death or undergo imprisonment for life, at the discretion of the jury.

The court took the position that the rule as to reasonable doubt must be applied before a conviction of first degree murder could be determined upon, but when that appeared then the question of penalty was a matter of discretion, the conclusion reached to be based upon the facts and circumstances established. It expressed its thought in this language: "After you have fixed in your minds beyond a reasonable doubt all the facts and circumstances upon which to act, then upon the facts and circumstances as you so find them, the question of fixing either the death penalty or life imprisonment is, under the act, to be an exercise of discretion on your part. Of course, in exercising that discretion you will take into consideration all the facts and circumstances of the case as, beyond a reasonable doubt, you find them to be." In slightly different words, the same statement is used in qualifying the tenth point, and, likewise, given in answer to the twelfth, which requested the court to charge that, if there was "a reasonable doubt, as to the justice of imposing the death penalty," a sentence of life imprisonment should be directed.

The Act of 1925 contemplates, first, a finding of guilt of first degree murder, and, thereafter, the exercise of discretion by the jurors. It does not provide that the jury may fix only the death penalty in case they are convinced beyond a reasonable doubt that it is proper. It leaves to them the duty of determining fairly, under all the proven facts, what is right and just under the circumstances, and it is their discretion which is to be exercised after the guilt is determined. The instructions complained of fairly explained their duty in case of a

finding that all the facts necessary to convict had been established beyond a reasonable doubt.

This case was tried with exceptional care, and we see no error which would justify the grant of a new trial.

The judgment is affirmed, and it is directed that the record be remitted for the purpose of execution.