Commonwealth *v.* Aljoe, Appellant.

Argued November 10, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph J. Lee,* with him *Carl Belin, Jr.,* for appellant.

*John K. Reilly, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 4, 1966:

This is an appeal from a conviction of murder in the first degree. The jury fixed the penalty at death.

Defendant was convicted of the brutal and senseless slaying of Eugene Conway, a twelve-year-old neighbor, whom he killed on September 7, 1963, with two shots from a .30 calibre rifle. The victim was almost completely decapitated. Several hours after the killing, defendant was arrested and taken to the State Police Barracks where he was questioned. He was provided with fresh clothing and asked to remove the clothing he wore that day. Defendant complied. Tests were performed on the stains found on his trousers. These tests indicated the presence of traces of human brain tissue. After a petition to suppress this evidence was denied by the trial Court, the evidence was used against defendant at his trial.

During the trial the District Attorney voluntarily reported that it had come to his attention that one of the jurors had been convicted of the crime of embezzlement in 1923—over 40 years before. Defendant's motion for the withdrawal of a juror was denied by the trial Court.

After the jury had rendered a verdict of guilty of murder in the first degree, the District Attorney argued on the issue of *penalty* as follows:

"Your choice will be, as the Judge will instruct you, between life imprisonment and death. Life imprisonment does not mean that he will be in jail for the rest of his natural life. One day he will become eligible for parole; and if the Parole Board grants him parole, can you be sure that this will not happen again? Can you be sure that what time he spends in jail will sufficiently deter him from this—from committing this all over again?"

During the course of the jury's deliberations on the question of penalty, the jury submitted to the Court the following questions:

"If a verdict of life imprisonment should be returned: How many years imprisonment will this mean? How soon can he expect to ask for a parole? Or in how many years will he be eligible for parole?" To which the Court replied: "Jurors: Unfortunately, the Court is not in position to supply the answers to the above questions. It would be improper to do so."

Defendant alleges the following errors: (1) Denial of the petition to suppress the above mentioned evidence; (2) Denial of the motion to withdraw a juror; and (3) Prejudicial error (a) in permitting the District Attorney to discuss parole, (b) in the refusal of the trial Judge to answer the jury's questions concerning parole, (c) in merely stating that it would be improper for him to answer the questions, and (d) in not explaining why it would be improper.

## Self-incrimination

Defendant contends that he was compelled to testify against himself when the Commonwealth was allowed to examine his trousers and prove the presence

of brain tissue thereon. This contention alleges that such conduct violates (1) the Fourth Amendment of the Constitution of the United States, which provides that persons and their effects shall be secure from unreasonable searches and seizures and (2) the Fifth Amendment which provides that no person shall be compelled in any criminal case to be a witness against himself or be deprived of life or property without due process of law.

Defendant's trousers were taken (without objection) and examined for the purpose of identifying him with the slaying of Conway. Such a procedure or practice is similar to seizing any articles, instruments, fruits and other evidence of crime and similar to the Commonwealth's right to fingerprint an accused or compel him to stand in a police lineup. Such procedures and practices and tests may result in freeing an innocent man accused of crime, or may be part of a chain of facts and circumstances which help identify a person accused of a crime or connect a suspect or an accused with the crime of which he has been suspected or has been accused. The law is well settled that such actions, practices and procedures do not violate any constitutional right. *Commonwealth v. Gockley,* 411 Pa. 437, 446, 447, 192 A. 2d 693; *Commonwealth ex rel. Policastro v. Keister,* 289 Pa. 225, 229, 137 A. 223; *Commonwealth v. Negri,* 414 Pa. 21, 198 A. 2d 595; *Commonwealth v. Cockfield,* 411 Pa. 71, 190 A. 2d 898; *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304; *Holt v. U. S.,* 218 U.S. 245; *Commonwealth v. Fletcher,* 387 Pa. 602, 128 A. 2d 897; *Commonwealth v. Musto,* 348 Pa. 300, 35 A. 2d 307; *Commonwealth v. Tunstall,* 178 Pa. Superior Ct. 359, 115 A. 2d 914; *Commonwealth v. Adams,* 174 Pa. Superior Ct. 504, 102 A. 2d 202; *Commonwealth v. San Juan,* 129 Pa. Superior Ct. 179, 195 A. 433; *Johnson v. Commonwealth,* 115 Pa. 369, 9 A. 78. Compare

also *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A. 2d 861; *Rigney v. Hendrick*, 355 F. 2d 710.

In *Holt v. U.S.*, 218 U.S., supra, the Court, speaking through Mr. Justice HOLMES, said (pp. 252-253): ". . . the prohibition of compelling a man . . . to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof."

Defendant does not allege that his arrest was other than valid and lawful. A search and seizure incident to a valid and lawful arrest is not unreasonable and violates no constitutional guarantees. In such circumstances, officers ". . . when making a lawful arrest with or without a search warrant [may] discover and seize any evidence, articles or fruits of crime found upon the prisoner or upon the premises under his control at the time of his lawful arrest . . ." *Commonwealth v. Gockley*, 411 Pa., supra, pages 446-447.

In *Commonwealth v. Kravitz*, 400 Pa., supra, the Court said (page 219): "The purpose of the constitutional provision is to prohibit the compulsory oral examination of the prisoner . . . to prevent his being required to incriminate himself by speech or the equivalent of speech: Commonwealth v. Valeroso, 273 Pa. 213, 219, 220, 116 A. 828, 830."

Prior and subsequent decisions have likewise interpreted and limited the constitutional immunity from self-incrimination to speech, or the equivalent of speech, as former Chief Justice STERN so clearly said in *Commonwealth v. Musto*, supra. For example, in *Commonwealth v. Fletcher*, 387 Pa. 602, 128 A. 2d 897, the District Attorney was permitted to call the jury's attention to defendant's peculiar manner of walking, even

though defendant had not taken the witness stand.* In *Commonwealth v. Statti,* 166 Pa. Superior Ct. 577, 73 A. 2d 688, the Court held that "certainly one lawfully arrested may not refuse to submit to finger printing, nor to a search of his person. So also the constitutional privilege does not allow a defendant to refuse a witness the opportunity of seeing him and hearing his voice, for the purpose of identification. Cf. Johnson v. The Commonwealth, 115 Pa. 369, 395, 9 A. 78. The privilege did not prevent the Commonwealth from requiring some of the defendants to stand in the presence of the jury, as they were identified by a witness in Commonwealth v. Safis et al., 122 Pa. Superior Ct. 333, 186 A. 177."

In *Commonwealth ex rel. Policastro v. Keister,* supra, the Court said (pp. 229-230) : "It is well settled that an officer making an arrest upon a criminal charge may also take into his possession the instruments of the crime and such other articles as may reasonably be of use as evidence upon the trial. The officer not only has the lawful power to do so, but would be blameworthy if he failed in this respect. The maintenance of public order and the protection of society by efficient prosecution of public offenders require such action: Getchell v. Page, 18 L. R. A., N. S. 253; where a person stands charged with crime and instruments are, or devices were, found upon his person or in his possession which was a part of the means by which he accomplished the offense, those instruments, devices or tokens are legitimate evidence for the State and may be taken from him and used for that purpose: State v. Edwards, 51 W. Va. 220."

---

* In the *Fletcher* case the Commonwealth was permitted to offer in evidence plaster casts of footprints alleged to have been defendant's, taken from the garden adjacent to the place of the murder.

This contention of the defendant is devoid of merit.

### Denial of the Motion to Withdraw a Juror

Although the Acts of Assembly relating to the qualifications of jurors in Counties of the First,* Seccond** and Third*** Classes provide that persons who have been previously convicted of felonies or crimes involving moral turpitude may not serve on a jury, no such provision or prohibition appears in any Act relating to any other County. Appellant's trial took place in Clearfield County, a County of the Sixth Class. In such a County, the applicable statute requires only that the jurors be ". . . sober, intelligent and judicious persons . . ."****

It is clear that the presence on a jury in Clearfield County of a man who had been convicted of a misdemeanor, viz., embezzlement does not violate any statutory or decisional law of this Commonwealth,***** and cannot be successfully raised after a jury has been sworn except in those cases where a defendant has been intentionally misled or deceived by the juror or by the opposite party. Cf. *Commonwealth ex rel. Fletcher v. Cavell*, 395 Pa. 134, 149 A. 2d 434, certiorari denied, 361, U.S. 847; *United States ex rel. Fletcher v. Cavell*, 287 F. 2d 792 (3d Cir. 1961); *Commonwealth v. Curry*, 287 Pa. 553, 135 A. 316; *Commonwealth v. Dombek*, 268 Pa. 262, 110 A. 532; *Traviss v. Commonwealth*, 106 Pa. 597, 607; *Commonwealth v. Walker*, 283 Pa. 468, 129 A. 453; *Romesberg v. Merrill*, 99 Pa.

---

* Act of May 10, 1949, P. L. 1066, §2(c), 17 P.S. §1252(c).

** Act of May 11, 1925, P. L. 561, §9(c), 17 P.S. §1279(c).

*** Act of April 16, 1925, P. L. 244, §2, 17 P.S. §1322; Act of May 17, 1939, P. L. 157, §2, 17 P.S. §1333.

**** Act of April 10, 1867, P. L. 62, §2, 17 P.S. §942.

***** It is well known by Judges and lawyers that in the selection of a jury, most defense lawyers welcome a person who has been previously convicted of crime.

Superior Ct. 197; *Commonwealth v. Penrose,* 27 Pa. Superior Ct. 101.

In some counties of Pennsylvania a juror is sworn as soon as accepted. In other counties the entire jury is sworn only after twelve of them have been accepted, impanelled and sworn. In *Commonwealth v. Curry,* 287 Pa.; supra, the Court said (page 556): "The generally recognized rule is that the court may, during the selection of the jury and before it is completed and sworn, excuse or discharge one of the jurors already accepted: 35 C. J. 420."

In *Commonwealth ex rel. Fletcher v. Cavell,* 395 Pa., supra, the Court said (pp. 137, 138, 139): "The applicable common law rule of criminal procedure uniformly enforced throughout the State is the same as that declared by the Act of 1939, supra, for counties of the third class. The controlling rule was well stated in Traviss v. Commonwealth, 106 Pa. 597, 607; where the defendant was likewise appealing from a sentence imposed upon a first degree murder conviction. As there enunciated, 'The time to challenge is before the juror is sworn; if not exercised then, the right is waived. That waiver may be relieved against when the party affected has been intentionally misled or deceived by the juror or the opposite party . . .' . . . In Commonwealth v. Walker, 283 Pa. 468, 472-473, 129 A. 453, before quoting the rule as stated in Traviss v. Commonwealth, supra, this court declared that, 'It is the duty of parties to ascertain, by proper examination at the time the jury is impaneled, the existence of any reasons for objection to the jurors. Here there was no deception by the juror or anyone as to the fact; no effort was made to elicit such information; the failure to do so and to make objection at the proper time operates as a waiver [citing authorities from various jurisdictions].' The Walker case was also an appeal by a defendant from a sentence imposed upon a conviction for

murder in the first degree. . . . Again, in Romesberg v. Merrill, 99 Pa. Superior Ct. 197, 200, the court said, 'As stated above, the time to challenge is before the juror is sworn. If not exercised then, the right is waived. Traviss v. Com., supra, Com. v. Dombek, 268 Pa. 262; Com. v. Penrose, 27 Pa. Superior Ct. 101; Com. v. Walker, 283 Pa. 468 . . .' "

Defendant contends that the disparity in the statutory provisions among the Counties amounts to a deprivation of the Equal Protection of Laws afforded him by Amendment XIV of the Constitution of the United States. If this disparity amounted to a violation of the Equal Protection clause of the Constitution—and we are convinced that it does not—this constitutional right may be waived and was waived when the forty-year-old prior conviction was not elicited on the voir dire. Furthermore, defendant has not shown, as he must, any prejudice amounting to essential unfairness. *United States ex rel. Darcy v. Handy,* 351 U.S. 454, 462; *Adams v. United States ex rel. McCann,* 317 U.S. 269, 281; *Buchalter v. New York,* 319 U.S. 427, 431.

It is clear that the lower Court did not err in denying defendant's motion to withdraw a juror.

## Parole

There are at least two ways in which considerations of parole may arise: (1) Where the jury spontaneously and during their deliberations request information of the Court concerning the possibility of parole, or the time when a person who has been sentenced to life imprisonment will be eligible for parole; (2) where, as here, the District Attorney, in his address to the jury *on the issue of penalty,* deliberately injects such considerations of parole by arguing that life imprisonment does not really mean life imprisonment but probably an early release on parole.

In the first situation, we have held that when such questions are asked spontaneously by the jury, the Court should refuse to answer them. For proper and improper answers cf. *Commonwealth v. Smith,* 405 Pa. 456, 176 A. 2d 619; *Commonwealth v. Ballem,* 386 Pa. 20, 123 A. 2d 728; *Commonwealth v. Johnson,* 368 Pa. 139, 81 A. 2d 569; *Commonwealth v. Mills,* 350 Pa. 478, 39 A. 2d 572.

Mr. Justice (later Chief Justice) Horace Stern pertinently said in *Commonwealth v. Johnson,* supra (page 148): "It seems to be quite common for juries in murder cases to make inquiries of this nature, and the reply of the court thereto should be, in substance, that whether the defendant might at any future time be pardoned or have his sentence commuted is no concern of theirs and should not enter in any manner whatsoever into their consideration of the proper penalty to be imposed, which should be determined solely in the light of the relevant facts and circumstances as they then existed."

In the instant case, the Court as above quoted replied: "Jurors: Unfortunately, the Court is not in position to supply the answers to the above questions. It would be improper to do so." The reply of the Court was correct and was not prejudicial.

## The Penalty

However, in the second situation above mentioned where a District Attorney, during his address to the jury on the subject of penalty, deliberately injects considerations of parole, this is not only unfair and improper but is likely to prejudice the defendant.

The Act of 1939, June 24, P. L. 872, §701, 18 P.S. §4701, provides: "*A failure of the jury to agree upon the penalty to be imposed, shall not be held to impeach or in any way affect the validity of the verdict already*

*recorded,* * and whenever the court shall be of opinion that further deliberation by the jury will not result in an agreement upon the penalty to be imposed, it may, in its discretion, discharge the jury from further consideration thereof, in which event if no retrial of the indictment is directed, the *court shall sentence the defendant to life imprisonment* upon the verdict theretofore rendered by the jury, and recorded as aforesaid."

We disapprove of the remarks by the District Attorney and consider them so prejudicial that in the interest of fairness and Justice they should be considered as equivalent to or in the same class as a disagreement of the jury upon the penalty to be imposed; consequently the penalty must be reduced to life imprisonment.

Since the above quoted Act of 1939 provides for a separate determination of the penalty by the jury *after a verdict of guilty is rendered,* and since the prejudicial remarks were made after the verdict of guilty of murder in the first degree had been rendered by the jury, and during the jury's consideration of the appropriate penalty, there is no need for a new trial on the issue of guilt. We have considered *Commonwealth v. Smith,* 405 Pa., supra, which is relied upon by appellant, and believe it is clearly distinguishable.

We therefore remand the case to the lower Court with directions to vacate the death penalty and to sentence Aljoe to life imprisonment.

---

* Italics throughout, ours.