## Commonwealth v. Krasner

William H. Lamb, Assistant District Attorney, for Commonwealth.

Robert Levy, for defendants.

KENT, J., January 7, 1974.—This matter is before the court on defendants' motions for new trial and in arrest of judgment. Defendants were, at the time of

their arrest, the operators of a store known as the "Adult Book Store," located at 1009 West Chester Pike, West Goshen Township, Chester County, Pa.

Following arrests in January of 1972, defendants were charged with violations of The Penal Code of June 24, 1939, P. L. 872, sec. 524, 18 PS §4524, (now Crimes Code of December 6, 1972, P. L. 1068, 18 PS §5903) in selling and possessing with intent to sell obscene literature. Following a trial of two weeks duration, verdicts were rendered by the jury which acquitted defendant Pyne of the charge brought against him to January term, 1972, no. 38 but convicted Pyne and his co-defendant, Krasner, on the remaining bills of indictment. As directed by the court, the jury returned a separate finding with respect to each of the publications and devices included in the multiple charge bills of indictment.

Subsequent to the trial on said charges but prior to argument on defendants' motions, a series of decisions were rendered by the Supreme Court of the United States concerning what that court has referred to as "the intractable obscenity problem": Interstate Circuit, Inc. v. Dallas, 390 U. S. 676, 704 (1968). Inasmuch as the instant case has not reached finality, the principles enunciated by that tribunal must, to the extent applicable, be applied herein: Linkletter v. Walker, 381 U. S. 618 (1965).

Defendants have set forth a variety of grounds in support of their motions which will be considered seriatim.

I. Initially, defendants contend that the decision of the Supreme Court of the United States in the case of Miller v. California, 413 U. S. 15, 93 S. Ct. 2607 37 L. Ed. 2d 419 (1973), renders section 524 unconstitutional. With this contention, we do not agree.

Under the Pennsylvania statute, " 'Obscene' as used in this section, means that which, to the average person applying contemporary community standards, has as its dominant theme, taken as a whole, an appeal to prurient interest." Subsequent decisions of the Supreme Court of this Commonwealth have required that proof of obscenity include patent offensiveness and an utter lack of redeeming social value: Commonwealth v. LaLonde, 447 Pa. 364 (1972); Commonwealth v. Dell Publications, Inc., 427 Pa. 189 (1967). This was in accord with the elements of obscenity as set forth by the Supreme Court of the United States in the case of Memoirs v. Massachusetts, 383 U. S. 413, 419 (1966).

In the Miller decision (page 23) the Federal tribunal expressly abandoned the Memoirs test of obscenity and, in its place, declares that:

"State statutes designed to regulate obscene materials must be carefully limited . . . As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."

The boundaries thus established for constitutionally permissible proscription of obscene material are broader than those encompassed by section 524 of The Penal Code. See People v. Enskat, 33 Cal. A. 3rd 900 (1973). Both tests require that the concept of obscenity be limited to works which, taken as a whole, appeal to a prurient interest in sex. Both tests require the

portrayal of sexual conduct in a patently offensive manner. The Miller test applies to the works which, taken as a whole, do not have serious literary, artistic, political or scientific value. Section 524, as noted above, requires that the material be utterly without redeeming social value: Commonwealth v. Dell Publications, Inc., supra. It is apparent that the latter requirement is more restrictive than the former. The scope of regulation under Miller is confined to works which depict or describe sexual conduct. Section 524, as authoritatively construed, is limited to material which is patently offensive in its description or representation of sexual matters.

We accordingly conclude that the decision of the Supreme Court of the United States in the Miller case has not rendered this Commonwealth's statute unconstitutional.

II. In their motions, defendants contend that "the jury erroneously found the defendant guilty after the Commonwealth's own witnesses conceded that the material in question under the indictment had redeeming social value." The record does not support this contention.

Two expert witnesses were called by the Commonwealth. The sum total of their very lengthy and detailed direct and cross-examinations is, perhaps, best summarized in the words of the stipulation entered of record which, it was agreed, would summarize the experts' conclusion in this regard. That stipulation provided that:

". . . In the case of each book . . . there is in the book at least one article, which, if read separate and apart from the accompanying pictures, would have some redeeming social value; and that in the case of each of these books . . . it is his opinion that the book

taken as a whole would be utterly without redeeming social value, because the tone, character, and the value of the book is fixed by the character of the included pictures."

Defendants contend that such testimony necessarily imparts to the questioned works the requisite modicum of socially redeeming value. Such was not the conclusion testified to by the Commonwealth's witnesses. That testimony was to the effect that the innocuous and quasi-scientific texts were so juxtaposed with garish photography as to render the works "utterly without redeeming social value." As the Commonwealth demonstrated in its redirect examination of its expert, the insertion of a Shakespearean soliloquy in a magazine did not, per se, confer redeeming social value.

By its verdicts, the jury determined the questioned items to be obscene under instructions to which defendants take no exception. Accepting the testimony of the Commonwealth's witnesses in the view most favorable to its position, as we must for purposes of these motions, we are unable to agree that the verdicts were contrary to the evidence in this regard.

III. Defendants further contend that the indictments were fatally defective in failing to charge that defendants had knowledge that the publications sold were obscene. Under our Rules of Criminal Procedure, such a contention is properly the subject of pretrial application: Pennsylvania Rules of Criminal Procedure 304, 305. Pretrial challenges to the bills of indictment were, in fact, presented and heard but did not raise the question of scienter. Notwithstanding this fact, defendants raised the issue of scienter at the outset of the trial.

Defendants rely on the case of Smith v. California, 361 U. S. 147 (1959), holding that guilty knowledge

of a book's alleged obscenity is an unconditional and constitutional prerequisite to a conviction for selling allegedly obscene books. In the instant case, the jury was expressly instructed that a finding of guilty knowledge, or scienter, on the part of defendants was a prerequisite to a conviction. Defendants make no complaint of the charge but contend that the absence of the element of scienter from the statute renders it constitutionally defective. With this contention, we do not agree.

As noted above, authoritative construction of section 524 by the courts of this Commonwealth has resulted in the limitation of the concept of obscenity involved therein to comport with constitutional requirements. This may properly be done since the legislature has declared that the courts may be guided by the presumption "That the legislature does not intend to violate the Constitution of the United States or of this Commonwealth": Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552. The same procedure adopted in the instant case had the tacit approval of the Commonwealth's Supreme Court in Commonwealth v. LaLonde, supra.

IV. Defendants further contend that notwithstanding the instructions of the court that scienter must be found before defendants could be convicted, the Commonwealth failed to adduce any evidence of scienter.

The record does not support this contention. The record contains photographs offered by the Commonwealth of the interior of defendant's premises revealing signs therein designating "hard core, h.c.," "Spread SP," and similar designations. Furthermore, this merchandise was marketed under the designation "Adult Book Store" in a building whose windows had been completely painted, thus denying any external inspec-

tion of its contents. The jury might very properly infer from these circumstances the existence of scienter.

V. Defendants further contend that the introduction into evidence of Commonwealth's exhibits numbered 26 through 61 was violative of their Fifth Amendment rights of the United States Constitution. The exhibits in question, consisting of a variety of items offered for sale by defendants at their place of business, had originally been acquired by the Commonwealth through the medium of a subpoena duces tecum. That subpoena had been issued by the Commonwealth in the course of a civil injunctive proceeding brought against the same defendants. Defendants contend that any waiver of their privileges against self-incrimination which may have occurred in the civil proceeding by reason of their production of the items in response to the subpoena was limited to that proceeding only. By timely objection interposed at the instant trial, defendants sought to assert their privilege with respect to the challenged exhibits.

In so doing, defendants rely upon the decision in Schmerber v. California, 384 U. S. 757 (1966), where, in speaking of the privilege against self-incrimination, it was stated:

"It is clear that the protection of the privilege reaches an accused's communication, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers": 384 U. S. 757, 763.

The items here sought to be brought within the ambit of the privilege are not the "accused's communication" of the Schmerber decision. The items in question were defendants' stock in trade offered by them for sale to the public. The challenged exhibits did not purport to be, and were not in fact, "communi-

cations" of defendants any more than the inventory of any retail establishment constitutes a communication to its customers.

The purpose of the constitutional provision is to prevent a defendant's being required to incriminate himself by speech or the equivalent of speech: Commonwealth v. Karavitz, 400 Pa. 198 (1960). In Commonwealth v. Aljoe, 420 Pa. 198 (1966), in refusing an attempted assertion of the privilege with respect to an article of clothing belonging to the defendant, it was said:

"Such a procedure or practice is similar to seizing any articles, instruments, fruits and other evidence of crime and similar to the Commonwealth's right to fingerprint an accused or compel him to stand in a police lineup. . . . The law is well settled that such actions, practices and procedures do not violate any constitutional right": 420 Pa. 198, 202.

The privilege exists to prevent the use of physical or moral compulsion to extort communications from a defendant: Holt v. U. S., 218 U. S. 245 (1910). Finding as we do that the challenged exhibits do not constitute communications of defendant within the meaning of the Fifth Amendment, their admission was not in error.

VI. Defendants further contend that the witnesses called on behalf of the Commonwealth did not qualify as expert witnesses and that their testimony should be expunged.

The question of the expertise requisite to qualify a witness in questions of obscenity has been laid to rest in the decision of the Supreme Court of the United States in Paris Adult Theater v. Slaton, 413 U. S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973), where it was stated:

"Nor was it error to fail to require 'expert' affirmative

evidence that the materials were obscene when the materials themselves were actually placed in evidence . . . The films, obviously, are the best evidence of what they represent."

The footnote to the quoted passage indicates that:

"This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. Cf. 2 J. Wigmore, Evidence, §§556, 559 (3d ed. 1940). No such assistance is needed by jurors in obscenity cases; indeed the 'expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony."

At the date of the trial of the instant case, the status of the law was such that expert testimony was believed to be necessary to establish obscenity, and the Commonwealth offered two witnesses for this purpose. A review of their qualifications reveals that each had travelled extensively within the United States and abroad. Both possessed distinguished academic credentials, including the degree of Doctor of Philosophy. Both had extensive experience in teaching and counseling persons of a wide range of age, ethnic and socio-economic backgrounds. One had several years service in two separate branches of the armed forces as an enlisted man and as a commissioned officer. The other was an ordained clergyman with a wide variety of pastoral experience. Both were widely read and had extensive organizational contacts in the various communities in which they had resided. We note that in the case of Miller v. California, supra, the testimony of an experienced police officer was expressly approved by the court therein. We accordingly find defendants' contention to be without merit.

VII. Defendants further assign as grounds in sup-

port of their motions certain arguments used by the district attorney in the course of his summation. Although the summations of counsel were stenographically transcribed, defendants have not quoted from the record the specific challenged passages but rather have paraphrased the same in their motions. Notwithstanding this fact, we have reviewed that summation in its entirety and find defendants' contentions without merit.

The district attorney did, as defendants contend, argue to the jury that there was no issue of First Amendment freedom of speech involved. This statement was made in the context of his argument that the Commonwealth had proven the materials in question to be obscene beyond a reasonable doubt. Since obscene material is not within the protection of the First Amendment, this was proper argument: Miller v. California, *supra.*

A review of the district attorney's summation in the full context of the arguments asserted therein fails to support defendants' contentions that he asserted that pornography is equal to obscenity or that defendants could be convicted because the works in question were not great works of art or of literature. With respect to the district attorney's comments upon the manner in which the materials in question were offered for sale, we do not understand the same to have been directed to the nonexistent charge of pandering, but rather to the question of defendants' scienter. This was an issue before the jury and a proper subject for comment by the district attorney. We find no impropriety with respect thereto.

Finding no merit in the grounds assigned by defendants and pressed by them in support of their motions for new trial and in arrest of judgment, the same are dismissed this 7th day of January, 1974.