Commonwealth, Appellant, *v.* Cockfield.

Argued November 27, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

72

reargu-
ment refused June 3, 1963.

Arlen Specter, Assistant District Attorney, with him Louis F. McCabe, Assistant District Attorney, F. Emmett Fitzpatrick, Jr., First Assistant District Attorney, and James C. Crumlish, Jr., District Attorney, for Commonwealth, appellant.

Cecil B. Moore, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, April 16, 1963:

The basic question raised upon this appeal is whether the search of an automobile and the seizure of some of the contents of the trunk of that automobile were incidental to a concededly valid arrest.

In the early morning of April 7, 1960, a dwelling house, located on North Frazier Street, Philadelphia, and occupied by a Mrs. Quattlebaum (the deceased) and her two small children, was destroyed by fire and its occupants burned to death. While the fire was still burning, Detective Raifer went to the scene of the fire where he learned that "the fire had probably been caused by an accelerant."

While at the scene of the fire, Detective Raifer, having learned that the deceased had recently been having difficulties with a "boy friend", known as

"Bill", interrogated a Miss Planet, the deceased's next door neighbor. Miss Planet identified "Bill" as Charles Cockfield, a resident of the "200 block" of South Alden Street. She told the police officer that Cockfield had exhibited "a pattern and action of violence" and, on one occasion, had put a knife to the deceased's throat; that the deceased had received threatening letters from Cockfield which Miss Planet had seen; that deceased's dwelling house had previously had a fire of unknown origin.

Acting upon this information, Detective Raifer went to Cockfield's home on South Alden Street but was unable to secure admission. Leaving other officers to maintain a surveillance of Cockfield's home, Detective Raifer, through his superior officer, ascertained that Cockfield was the registered owner of a 1953 Dodge automobile and, about 5:30 a.m., April 7th, this automobile, *its motor still warm,* was located about three-quarters of a block from Cockfield's home. Detective Raifer examined the automobile and its glove compartment and kept the automobile under surveillance until about 8:15 a.m. on that date, at which time the car trunk was examined and, in addition to tools, a fruit basket and construction paraphernalia, there was found a "two gallon Gulf, blue and orange . . . gasoline can that was lying on its side" and under it ". . . a wet spot on top of the fruit basket . . . which smelled like gasoline" together with "a roll of sort of pale, green toilet paper, and, on the edge of the roll, itself, there were charred marks, charred as if from fire." The trunk was then closed and its contents left undisturbed.

Thereafter, the Cockfield automobile was removed by the police and placed in front of a nearby police precinct station where its distributor cap was removed and certain wires disconnected. All police districts were notified to report any inquiry concerning the whereabouts of this automobile. The automobile dis-

appeared from in front of the precinct station that afternoon.[1]

In the early morning of April 8th, Cockfield was taken into custody at his home and in the early morning of April 9th made a statement to the police wherein he admitted that he had thrown gasoline from the can on the porch of the deceased's house in order to frighten her and show her what might happen, but he denied having ignited the gasoline or having anything to do with the fire. Thereafter, Cockfield was taken to his home for a change of clothing and then arraigned on charges of murder, manslaughter and arson.

The next day—April 10th—Detective Raifer searched Cockfield's car and seized the gasoline can and toilet tissue from the trunk. Neither in connection with the arrest of Cockfield nor with the search of his automobile and the seizure of some of its contents did the police officers have any warrant.

On May 5th, 1962,[2] Cockfield's counsel moved to suppress as evidence the gasoline can and toilet tissue on the ground they had been obtained through an illegal search and seizure. After a hearing in the Court of Quarter Sessions of Philadelphia County before the Honorable GERALD GLEESON, that court directed the

---

[1] Cockfield, in the meantime, found his automobile in front of the precinct station, apparently was told the police did not want it, went out and bought the parts necessary to start it and removed the automobile to the residence of one Curtis Wally, Cockfield's friend.

[2] This was a post-indictment motion made over two years after the arrest (April 9th, 1960) and almost two years after indictment (May 19th, 1960) but prior to trial on the charges. It is difficult to understand, and the record discloses no reason, why Cockfield remained untried for a period of over two years after his arrest. Even though the search and seizure took place prior to *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, *Mapp* governs this situation and, if the evidence was illegally obtained, such evidence would be subject to suppression.

suppression of the evidence. From that order, the Commonwealth has appealed to this Court.[3]

Two questions are raised: (a) does *Mapp v. Ohio,* supra, require state courts to conform to federal tests as to the "reasonableness" of a search and seizure?; (b) was the search of Cockfield's automobile and the seizure therefrom of the gasoline can and toilet tissue a reasonable search and seizure within the Constitution purview?

The first question raised has been considered and determined in *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963). In *Bosurgi,* we have held that state courts are still free, in passing upon the "reasonableness" of a search and seizure, to apply their own, rather than federal, standards as to what constitutes "reasonableness".

As to the second question raised, since the validity and the legality of the arrest of Cockfield is not questioned, the "reasonableness" of the search and the seizure depends basically upon whether such search and seizure were *incidental* to the arrest.

It is well established that, if an arrest is valid, a search and seizure which are incidental to that arrest are valid: *Commonwealth v. Bosurgi,* supra (p. 56) and cases therein cited.

In passing upon the validity of the search and the seizure in the case at bar certain facts have been established or assumed: (a) the search and seizure to which objection is made is that which took place on April 10, subsequent to the arrest, and not the alleged search which took place on April 7th, prior to the arrest; (b) the search and seizure took place 57 hours after Cockfield was taken in custody and 25½ hours after Cockfield's formal arraignment; (c) prior to

---

[3] On the right of the Commonwealth to appeal from this order, see: *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963).

Cockfield's arrest his automobile had been in the custody of the police for approximately 7 to 8 hours before it was repossessed by Cockfield and, during this period of time, no seizure of evidence took place although the evidence had been seen; (d) in Cockfield's written statement to the police, given approximately 23 hours prior to the search of the automobile, reference is made to both the gasoline can and the toilet tissue in the trunk.

The court below, as clearly appears from an examination of its opinion, took the position that "ample opportunity was presented to obtain a search warrant and there was no compelling sense of urgency which would justify the search of the car without a warrant" and that "the search and seizure conducted two days later cannot be seen as being incident to the earlier initial arrest". On both grounds the court erred.

The absence of a search warrant cannot per se be equated with "unreasonableness" of a search. The United States Supreme Court in *U.S. v. Rabinowitz*, 339 U.S. 56, 65, 66, 70 S. Ct. 430, stated: "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case."[4] In *Commonwealth v. Czajkowski*, 198 Pa. Superior Ct. 511, 516, 182 A. 2d 298, the Superior Court said: "We think that the search of the car at the police station turned

---

[4] In 1948, in *Trupiano v. U.S.*, 334 U.S. 699, 68 S. Ct. 1229, the Court held that a valid arrest did not in itself justify a search without warrant and that the Government must show that under the circumstances it was unreasonable or impracticable to require the arresting officer to obtain a warrant. In *Rabinowitz*, supra (p. 66), in 1950 the Court said: "To the extent that Trupiano v. United States, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled."

upon its reasonableness and propriety under the circumstances rather than upon the practicability of procuring a search warrant." The fact that the police officers might have had the opportunity to secure a search warrant does not detract from the "reasonableness" of the instant search if the "totality of the facts" surrounding the search and seizure were reasonable and, particularly, if the search and seizure were *incidental* to the valid arrest.

"Incidental", in its pertinent meaning, refers to that which follows as an "incident", i.e., "an event of accessory or subordinate character" (The Oxford English Dictionary, Vol. V, p. 152).[5] In our view, the search and seizure of the contents of Cockfield's automobile were clearly "incidental" to the arrest and the one logically followed the other. The time which elapsed between the time of the arrest and the time of the search does not destroy the character of the search as incidental to the arrest. The search and seizure flowed naturally from and were part and parcel of the normal and logical consequences of the arrest. Had the police officers not searched this automobile and seized this gasoline can and tissue they would have been derelict in their duties. Their actions did not constitute an unlawful or unconstitutional invasion of the right of privacy of Cockfield and, viewed under all the circumstances presented on the instant record, the search and seizure were clearly "reasonable" in nature and "incidental" to the valid arrest.

The court below in suppressing the evidence secured by this lawful search and seizure was clearly in error.

Order reversed.

---

[5] See: *State v. Brooks*, 57 Wash. 2d 422, 357 P. 2d 735, 736.

DISSENTING OPINION BY MR. JUSTICE COHEN:

In attempting to justify the searches and seizures in *Commonwealth v. Bosurgi* and *Commonwealth v. Cockfield,* the Commonwealth presents alternative arguments: (1) either the searches were valid under federal standards, or (2) *Mapp v. Ohio* does not require state courts to follow federal standards and the seizures involved do not violate the due process clause of the fourteenth amendment since they resulted from reasonable police activity. In holding that the evidence need not be suppressed, the majority first declares that *Mapp v. Ohio* does not require state courts to follow federal standards. It then proceeds, however, to uphold the searches under federal standards, a decision which renders its statements about the impact of *Mapp v. Ohio* as obiter dictum.

I dissent from the decisions in *Bosurgi* and *Cockfield* for two reasons. First, I disagree with the majority's view that these seizures can be upheld under federal standards. Secondly, even assuming that *Mapp v. Ohio* permits state courts to adopt less strict standards for judging the reasonableness of a search and seizure,[1] the police activity in these cases violates the fourteenth amendment's guarantee against invasions of privacy.[2]

In *Bosurgi,* the majority holds that an uncorroborated tip from an anonymous informant constitutes

---

[1] The possible interpretations of the *Mapp* decision are set forth in Note, The Supreme Court 1960 Term, 75 Harv. L. Rev. 40, 152-58 (1961). See also, Justice HARLAN's concurring opinion in the recent United States Supreme Court decision of *Gideon v. Wainwright,* 31 U.S. L. Week 4291 (March 18, 1963).

[2] In *Wolf v. Colorado,* 338 U.S. 25 (1949), the United States Supreme Court held that the fourth amendment's protection against invasions of privacy is embodied in the fourteenth amendment. In *Mapp,* the Court took the next logical step and held that evidence obtained in violation of this Constitutional guarantee must be excluded by state courts.

"probable cause" to arrest, thereby validating a search without a warrant incident to the arrest. Such holding is directly contrary to the federal cases on this point. The federal law is summarized as follows: "All the cases in which a 'tip' has been heavily relied upon to establish probable cause have stressed the need for 'a substantial basis for crediting the hearsay,' (citing a case), or a record of 'accurate and reliable information,' (citing a case); in short, 'a previously reliable informant,' (citing a case). Prudent and cautious men would not act in so decisive a fashion in reliance on an uncorroborated anonymous caller. . . ." (*Costello v. United States*, 298 F. 2d 99, 101 (9th Cir. 1962).[3] Therefore, the search and seizure in *Bosurgi* cannot be upheld under federal standards.

The majority's conclusion that there was "probable cause" under the federal cases for the arrest of defendant-Bosurgi is all the more surprising in view of the fact that the Commonwealth places little emphasis in its brief upon justifying the seizure under federal standards. The Commonwealth's main argument is that we should break away from the rigid federal formulas for judging the legality of searches and seizures, and instead establish a test of whether the police activity in question was reasonable under the circumstances.[4]

---

[3] The most recent United States Supreme Court cases on what constitutes "probable cause" to arrest are *Henry v. United States*, 361 U.S. 98 (1959) (no probable cause); *Draper v. United States*, 358 U.S. 307 (1959) (probable cause where a paid, reliable informant and tip corroborated by personal observations of the arresting officer); and *Jones v. United States*, 362 U.S. 257 (1960) (probable cause where a reliable informant and defendant a known user of narcotics).

[4] The practical significance of such a test would be to permit arrests where only reasonable suspicion exists that defendant has committed an offense, and to permit searches without warrants although not made incident to an arrest. See Specter, *Mapp v. Ohio*: Pandora's Problems for the Prosecutor, 111 U. Pa. L. Rev. 4 (1962).

Without deciding whether we are free to adopt the standard proposed by the Commonwealth, I cannot agree that the police acted in a reasonable manner in *Bosurgi*. No explanation is offered why the police did not first observe defendant's activities in the taproom and attempt to corroborate the anonymous tip, instead of immediately arresting and searching him. Therefore, even under the test suggested by the Commonwealth, I would hold that the evidence seized in *Bosurgi* must be suppressed.

Turning next to the *Cockfield* decision, the majority holds that the search of the automobile without a warrant was justified under the federal rule of "search incident to arrest," although at the time of the search defendant-Cockfield had been safely behind bars for 24 hours and the automobile was parked across the street from the police station. The meaning and rationale behind the search incident to arrest doctrine—the only occasion under federal law where a search can be conducted without a warrant—is not to be sought in the Oxford English Dictionary, as the majority does, but rather in the considerable body of federal law dealing with that concept. The two purposes of the rule are to protect the arresting officer from bodily harm, and to prevent the defendant from destroying evidence which is "within his control." See *United States v. Rabinowitz*, 339 U.S. 56 (1950). Where, as here, the defendant has been in custody for 24 hours the rule is obviously inapplicable. *Agnello v. United States*, 269 U.S. 20 (1925).

In addition, no explanation is offered why a search warrant was not secured. Although *Rabinowitz* holds that it is not necessary for the prosecution to justify in each case the failure to obtain a search warrant, the failure to secure a warrant where, as in the instant case, one could easily be obtained without danger of a disappearance of the evidence, is a factor in determin-

ing the validity of the search and seizure. See *Chapman v. United States;* 365 U. S. 610 (1961).

The failure to obtain a warrant under the circumstances presented in *Cockfield* would also lead me to hold, under the test suggested by the Commonwealth, that the police activity was not reasonable or proper. Therefore, I would hold that the evidence must be suppressed under either alternative presented by the Commonwealth.

For the above reasons, I dissent in *Commonwealth v. Bosurgi* and *Commonwealth v. Cockfield.*