STATE OF NORTH CAROLINA v. JAMES S. HANEY.

(Filed 3 March, 1965.)

**1. Robbery § 4—**
Evidence that appealing defendant, if not the owner, was the operator and controller of the automobile in which his confederates perpetrated one robbery and attempted another, is sufficient to be submitted to the jury on the question of the appealing defendant's guilt as an aider and abetter.

**2. Criminal Law § 50—**
The use of the expression "I believe" or other like phrases by a witness does not render the witness' testimony incompetent when the subject of the testimony relates to a personal observation by the witness and the uncertainty refers only to the witness' indistinctness of perception or memory in regard thereto.

**3. Criminal Law § 79; Searches and Seizures § 1—**
When the officers within twenty minutes of a lawful arrest searched the car in which defendant was at the time, the search of the automobile without a warrant is not unlawful, since it is incident to arrest.

APPEAL by defendant James S. Haney from *Campbell, J.*, October 12, 1964 Criminal Term of GASTON.

Three defendants, S. L. Tomberlin, B. M. Cantrell, and appellant James S. Haney, were jointly tried upon a bill of indictment charging

them with the armed robbery of $1.00 from C. F. Sims, a violation of G.S. 14-87. Defendants offered no evidence. The evidence for the State tends to show these facts:

On September 9, 1964, about 10:00 p.m., Sims encountered defendants at a rest stop on Interstate 85 just across the Catawba River in Mecklenburg County. He had a conversation with defendant Haney, who said he was broke and needed a job. While the men were talking, the Mecklenburg County police came by and required them to show their driver's licenses. About an hour later, after he had driven his 1964 Volkswagen to Textile Bowling Lanes at Belmont in Gaston County, Sims again encountered defendants. In about ten minutes he accepted their invitation to go for a ride with them in a 1951 green Pontiac automobile. Sims and Tomberlin sat in the rear seat and Cantrell in the right front seat. They drove down a paved road behind the bowling alley, and the car stopped. Without any warning, Tomberlin dazed Sims with a blow on the left side of his head. He then opened a knife and held it at Sims' left side under his arm. One of the men, whom Sims "believed" to be Haney, demanded his money. With Tomberlin holding the knife on him, "he gave them a dollar which he had in his pocket." Tomberlin demanded to know where his wallet was, and Sims divulged that it was in his automobile, which was locked and parked at the bowling alley. Tomberlin then took Sims' car keys from his pocket, and the men returned to the bowling alley, where one or more of them searched the Volkswagen, Tomberlin continuing to hold the knife on Sims. The wallet was found, but it contained no money. Defendants then inquired how much money Sims had in the bank. Sims stated the erroneous figure of $78.00 "and was told that was how much was wanted." Someone inquired whether he could cash a check. Sims said that he could in Charlotte. With Tomberlin continuing to hold the knife on Sims, the group proceeded by Highway 29 to Charlotte in the Pontiac. En route, Sims was threatened with his life if he tried to escape. About 1:00 a.m. the men arrived in Charlotte. Sims told them that he had a credit card for the Sheraton Hotel. There, they returned to him his wallet so that he might identify himself with its contents, and they told him that if he failed to come back out of the hotel they would wreck his Volkswagen and he would never see it again. They told him, also, that if he went to the police they would accuse him of being a sexual deviate who had attempted "to pick them up and . . . the police would arrest him." Nevertheless, in the hotel he had the clerk call the Charlotte police. The officers arrived in about four minutes, but the Pontiac was gone when they came. That same night, however, Haney was apprehended in the Pontiac at the Sheraton parking lot. Tomberlin and Cantrell were apprehended on foot in

the vicinity. Haney told the officers that in Belmont, Sims had offered him $3.00 to drive him to Charlotte. Having only the one dollar bill, he paid him that and promised to get two more dollars at the Barringer Hotel later. Haney had the dollar bill in his wallet when he was arrested. Twenty minutes after the arrest, "on a search of the Haney car," the officers found the keys to Sims' car under the dashboard "as you reach under the steering wheel."

At the close of the State's evidence, defendant Haney's motion for judgment as of nonsuit was overruled. The jury returned a verdict of guilty as to him. The record does not disclose the outcome as to Tomberlin and Cantrell. From a judgment of imprisonment, Haney appeals, assigning as error the overruling of his motion for nonsuit and the admission of certain evidence.

*T. W. Bruton, Attorney General, Richard T. Sanders, Assistant Attorney General for the State.*

*Dolley & Harris for defendant.*

PER CURIAM. Taking the evidence in the light most favorable to the State, as we must in considering a motion for nonsuit, it was amply sufficient to establish that defendant Haney, if not the owner, was the operator and controller of the Pontiac, the automobile in which one robbery was perpetrated and another attempted. Defendant Haney stopped the Pontiac while Tomberlin took the dollar bill from Sims at knifepoint. Haney drove the car back to the bowling alley where the Volkswagen was parked and stopped the Pontiac while the Sims automobile was searched. The record does not reveal whether it was Haney or Cantrell, or both, who made the search. Haney then transported Sims to Charlotte while Tomberlin held the knife on Sims and threatened his life if he tried to escape. Furthermore, defendant Haney admitted receiving the dollar which Sims said had been taken from him with the threatened use of a knife, and the keys to the Volkswagen were found in the "Haney car" immediately after his arrest. Clearly, Haney was not a disinterested bystander; he was an active participant in a conspiracy to rob Sims and in the consequent robbery. The motion for nonsuit was properly overruled. *State v. Holland,* 234 N.C. 354, 67 S.E. 2d 272.

When Sims was asked which of the men demanded his money when Tomberlin hit him, his reply was, "I believe Haney said that." Defendant contends that this evidence was merely the expression of an opinion or a guess and was therefore incompetent. This contention cannot be sustained. The witness was speaking of his first-hand observation. His expression, "I believe," merely connoted "an indistinctness of per-

ception or memory." Stansbury, North Carolina Evidence § 122 (2d Ed. 1963).

> "(W)hen a witness uses such expressions as 'I think,' 'My impression is,' or 'In my opinion,' this will be no ground of objection if it appears that he merely speaks from an inattentive observation, or an unsure memory, though it will if the expressions are found to mean that he speaks from conjecture or from hearsay." McCormick, Evidence § 10 (1954 Ed.).

The evidence was competent; its weight was for the jury.

Defendant next contends that the search which revealed the Volkswagen keys in the Pontiac was illegal because conducted without a search warrant some twenty minutes after Haney's arrest. Defendant was under lawful arrest. G.S. 15-41. The police had the privilege to search his person. *State v. Grant*, 248 N.C. 341, 103 S.E. 2d 339. Under the circumstances of this case they had the privilege, also, to search his automobile without a warrant.

> "As incident to a lawful arrest, the conveyance of the person arrested may be searched without a warrant. Accordingly a search warrant is not necessary to authorize a search of an automobile in which a person was riding or beside which he was standing when arrested, and an officer, after arresting and incarcerating accused, may return and make a search of his automobile." 79 C.J.S., Searches and Seizures § 67e (1952); *Cf. State v. Giles*, 254 N.C. 499, 119 S.E. 2d 394.

In *Allgaier v. State*, 200 Ind. 583, 164 N.E. 315, "after the arrest was made, appellant was taken to the jail, where the automobile was searched. This search was made soon after the arrest and was incident to same." The search revealed two bottles of whiskey, which, the court held, were properly introduced in evidence. *accord, People v. Garrett*, 232 Mich. 366, 205 N.W. 95; *State v. Williams*, 328 Mo. 627, 14 S.W. 2d 434; *State v. Cyr*, 40 Wash. 2d 840, 246 P. 2d 480; *Gray v. State*, 243 Wis. 57, 9 N.W. 2d 68. In *Commonwealth v. Cockfield*, 411 Pa. 71, 190 A. 2d 898, defendant's automobile was searched without a warrant 57 hours after he had been arrested for arson. In the trunk were found gasoline and a charred roll of toilet paper. In holding the evidence competent, the court said:

> " 'Incidental,' in its pertinent meaning, refers to that which follows as an 'incident,' *i.e.*, 'an event of accessory or subordinate character' (The Oxford English Dictionary, Vol. 5, p. 152). In our view, the search and seizure of the contents of Cockfield's auto-

mobile were clearly 'incidental' to the arrest and the one logically followed the other. The time which elapsed between the time of the arrest and the time of the search does not destroy the character of the search as incidental to the arrest. The search and seizure flowed naturally from and were part and parcel of the normal and logical consequences of the arrest. Had the police officers not searched this automobile and seized this gasoline can and tissue, they would have been derelict in their duties. . . ." *Id.* at 77, 190 A. 2d at 901.

Defendant's other assignments of error have been considered. They are without merit. In the trial below, we find

No error.