58

## Commonwealth v. Brackin

*Michael J. Kane,* Assistant District Attorney, for Commonwealth.

*Charles J. Conturso,* for defendant.

BECKERT, J., August 3, 1972.—We have before us for disposition, defendant's motion to suppress the evidence resulting from a breathalyzer test administered him pursuant to the Act of December 22, 1969, P. L. 392, sec. 1, 75 PS §624.1, he having been indicted for operating a motor vehicle while under the

influence of intoxicating liquor in violation of the Act of April 29, 1959, P. L. 58, sec. 1037, 75 PS §1037. Defendant contends that this evidence should be suppressed and held inadmissible at trial, because of the failure of the police officer to advise him of his right to have a physician of his own choosing then and there administer a breath or blood chemical test, in addition to the breathalyzer test which they performed. In order that the court, rather than a single judge, decide this question in this county, the matter was placed on the argument list and argued before the court en banc.

The act authorizing the use of a breathalyzer provides that any person who operates a motor vehicle or tractor, in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath for the purpose of determining alcoholic content of his blood. Subsection (g) of the aforesaid act provides that the person tested shall be permitted to have a physician of his own choosing then and there administer a breath or blood chemical test in addition, and the results of such test shall also be admissible in evidence. The act further provides that if any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given, but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. The act further provides in subsection (h) that the refusal to submit to a chemical test may be admitted into evidence as a factor to be considered in determining innocence or guilt.

This question has been the subject matter of other decisions at the nisi prius level. The question has not

been resolved by the appellate courts in this Commonwealth. The Commonwealth Court in Commonwealth v. Gallagher, 3 Com. Ct. 371 (1971), held that the failure to advise of this right was not an impediment to a suspension of operator's privileges, where appellant had refused to take the breathalyzer test and thereupon had his operator's privileges suspended under and pursuant to this act. This decision, however, does not answer the question before us, because the Gallagher court was dealing with a license suspension case, rather than a criminal case wherein the burden of proof is different. Furthermore, Gallagher was based to some extent upon the proposition that the right to operate a motor vehicle is a privilege, rather than a constitutionally protected property right. This doctrine is rather difficult, at the present time, to preach in view of the language in Bell v. Burson, 402 U.S. 535 (1971).

Without any hesitancy on our part, we can find that the taking of defendant's breath for the purpose of the breathalyzer test does not constitute a violation of defendant's protection against self-incrimination as spelled out in the Fifth Amendment of the United States Constitution. The taking of blood from a defendant for the purpose of a determination of the blood alcohol content is not such protective activity. See Schmerber v. California, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); Commonwealth v. Tanchyn, 200 Pa. Superior Ct. 148 (1963); Commonwealth v. Statti, 166 Pa. Superior Ct. 577 (1950), and Commonwealth v. Bozzo, 13 Bucks 181 (1963). Therefore, it would follow that the taking of his breath would not constitute such testimonial evidence as to fall within the protections of the Fifth Amendment, any more than the taking of his clothes for chemical testing or his fingerprints would: Commonwealth v.

Aljoe, 420 Pa. 198 (1966) and Commonwealth v. Statti, supra.

With equal force, we can document our statement that the taking of defendant's breath constitutes a search and seizure: Schmerber v. California, supra; and Commonwealth v. Irvin, 41 D. & C. 2d 301 (1966) on (taking of blood held to be search and seizure); Commonwealth v. Jefferson, 445 Pa. 1 (1971), (taking of fingerprints for evidential purposes); Commonwealth v. Aljoe, supra, (taking clothes for chemical analysis and evidentiary purposes); and State v. Swiderski, 94 N.J. Super. Ct. 14, 226 A.2d 728 (1967), which specifically held that a breathalyzer test to determine a subject's intoxication constituted a search of his person.

Be that as it may, we cannot agree with the holding of Commonwealth v. Dierkes, 51 D. & C. 2d 389 (1970), that the duty of the arresting officer to advise defendant that he has a right to have a physician of his own choosing then and there administer a breath or blood test, in addition to the Commonwealth's breathalyzer test, rises to the height of a constitutional right. The statement that this right is not one of constitutional stature should not be construed or interpreted as our holding that a defendant so situate as this defendant does not have the constitutional right to be examined by a doctor of his own choosing following his arrest. The refusal of a request by defendant for such an examination, whether it be of his breath, blood or any other type of examination, would most certainly be a denial of due process. See 78 A.L.R. 2d 905. We fail to see, however, how the failure to advise a defendant of that right could rise to constitutional dimensions.

To our way of thinking, a constitutional right means a right guaranteed to a citizen by the Constitution and is so guaranteed as to prevent legislative interfer-

ence. The Constitution does not place a burden upon an arresting officer to advise a defendant of all of the possible defenses that he might have, or all of the possible trial stratagems that are open to him. Defenant, in the exercise of his own common sense, has the right to seek such aid as he believes to be helpful to him. The constitutional guarantee flowing to a defendant is that no officer of the law can constitutionally prevent or refuse defendant of the right and opportunity to avail himself of certain protections and defenses. The Constitution does not guarantee that police officers, or others in authority, must suggest to a defendant every possible avenue that may be of any benefit to him in the course of defending himself against the crime for which he has been charged. To state the above in slightly different language, there is an affirmative duty upon an officer of the law to advise those charged with crimes of rights guaranteed in the Constitution, such as the right to counsel, the right against self-incrimination and other fundamental rights specifically spelled out therein, but, beyond those specifically designated rights, there does not exist an affirmative duty to advise one charged with a crime as to purely statutory rights, unless the statute expressly requires it: People v. Kerrigan, 154 N.W. 2d 43, 45 (8 Mich. App. 216) (1967)).

The wording in the instant statute providing that "the person tested shall be permitted to have a physician of his own choosing then and there administer a breath or blood chemical test in addition, and the results of such tests shall also be admissible in evidence" does not set forth a new constitutional guarantee, but merely is a spelling out in a statute of statutory rights which cannot be denied a defendant when requested, and if requested and performed by defen-

dant's physician, then the legislature states "and the results of such tests shall also be admissible in evidence." We note that nowhere in the statute is it dictated by the legislature that defendant need be advised of the right to the additional test by his own physician: Commonwealth v. Miller, 52 D. & C. 2d 630 (1971); Commonwealth v. Ode, 53 D. & C. 2d 563 (1971); People v. Kerrigan, supra.

Having reached the conclusion that defendant possesses only a statutory right, the problem of whether or not he consented to the taking of this test upon which defendant places such great weight is rendered moot.

Assuming, however, that we are in error in not considering this right to be one of constitutional dimension, we would, nevertheless, find that under the facts of our instant case defendant's motion to suppress should still be denied.

This case is before the court on "stipulation of counsel" and paragraph 1 thereof sets forth "That the defendant was arrested by a Middletown Township Police Officer on March 16, 1970 and charged with operating a motor vehicle while under the infuence of intoxicating liquor; . . ."

As defendant was arrested for this offense, it would most certainly appear that the ancient exception to the search and seizure prohibition would come into play, namely, the right to search the person of an individual incident to a lawful arrest. We are all familiar with the underlying rationale for this exception, that being "if the defendant be caught with the goods," he should then and there be searched rather than be permitted to dispose of evidence to the crime. Applying this principle to the instant case, we know as a matter of common knowledge that the intoxicating effect and the amount of alcohol within one's

person diminishes with the passing of time. In a matter of a few hours a person who was under the influence of intoxicating liquor may "sober up" to the extent of obtaining a favorable breathalyzer reading. Also, to be of real probative value, the test must be near to the offense in point of time. Therefore, a defendant arrested for this type of crime may "be caught with the goods," but by requiring the arresting officer to obtain a search warrant to seize the evidence, the same may be disposed of by the mere passing of time. It is for this reason that we hold that as the arrest was lawful and, therefore, made upon probable cause, (this fact is not disputed by counsel for the defense), there may be a search, (breathalyzer examination), of the person arrested and neither a body nor search warrant is necessary: Commonwealth v. Vassiljev, 218 Pa. Superior Ct. 215 (1971).

Therefore, in accordance with the above, we enter the following

## ORDER

And now, August 3, 1972, defendant's motion to suppress is hereby denied and refused.

## DISSENTING OPINION

GARB, J., August 3, 1972.—I most respectfully dissent.

We have before us for disposition defendant's motion to suppress the evidence resulting from a breathalyzer test administered him pursuant to the Act of December 22, 1969, P. L. 392 sec. 1, 75 PS §624.1, he having been indicted for operating a motor vehicle while under the influence of intoxicating liquor in violation of the Act of April 29, 1959, P. L. 58, sec. 1037, 75 PS §1037. Defendant contends that this evidence

should be suppressed and held inadmissible at trial because of the failure of the police officers to advise him of his right to have a physician of his own choosing then and there administer a breath or blood chemical test in addition to the breathalyzer test which they performed. In view of the unique nature of this contention, the matter was placed on the argument list and argued before the court en banc.

The act authorizing the use of a breathalyzer provides that any person who operates a motor vehicle or tractor in this Commonwealth shall be deemed to have given his consent to a chemical test of his breath for the purpose of determining alcoholic content of his blood. Subsection (g) of the aforesaid act provides that the person tested shall be permitted to have a physician of his own choosing then and there administer a breath or blood chemical test in addition, and the results of such test shall also be admissible in evidence. The act further provides that if any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary* may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. The act further provides in subsection (h) that the refusal to submit to a chemical test may be admitted into evidence as a factor to be considered in determining innocence or guilt.

This question has been faced and decided in a number of decisions handed down in several of our sister counties, but not by any appellate court in this jurisdiction. In Commonwealth v. Dierkes, 51 D. & C.

---

*Presumably, now the secretary of transportation.

2d 389 (1970), it was decided that failure of the police officers to advise defendant of his right to a similar test by a doctor of his choosing rendered the results of the test conducted by the police inadmissible in evidence. In Commonwealth v. Miller, 52 D. & C. 2d 630 (1971); Commonwealth v. Thompson, 52 D. & C. 2d 260 (1970); Commonwealth v. Ode, 53 D. & C. 2d 563 (1971); Commonwealth v. DiFrancesco, 62 Lanc. L. Rev. 349 (1971); Commonwealth v. Morrison, 54 D. & C. 2d 298 (1971), and Commonwealth v. Rickey, 54 D. & C. 2d 337 (1971), the contrary result was achieved. In Commonwealth v. Gallagher, 3 Com. Ct. 371 (1971), it was held that failure to advise of this right was not an impediment to a suspension of operator's privileges where appellant had refused to take the breathalyzer test and thereupon had his operator's privileges suspended under and pursuant to this act. We do not believe that this decision is dispositive of the question before us because that was a license suspension case, rather than a criminal case wherein the burden of proof is different. Furthermore, this latter opinion was based to some extent upon the proposition that the right to operate a motor vehicle is a privilege rather than a constitutionally protected property right, and the extent to which the decision in that case was reached, based upon that legal underpinning, may now be questionable in view of Bell v. Burson, 402 U.S. 535 (1971).

The view I take of this case is different from that taken in any of the foregoing decisions and, therefore, their rationale, regardless of which side of the question they happen to be on, is of little help. I view the matter before us as one of constitutional dimension and conclude that the evidence must be suppressed.

I think it is clear that the taking of defendant's breath for the purposes of the breathalyzer test does

not constitute a police activity within the purview of defendant's protections against self-incrimination as enunciated in the Fifth Amendment to the United States Constitution. The taking of blood from defendant for the purpose of a determination of the blood alcohol content is not such protected activity. See Schmerber v. California, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); Commonwealth v. Tanchyn, 200 Pa. Superior Ct. 148 (1963); Commonwealth v. Statti, 166 Pa. Superior Ct. 577 (1950), and Commonwealth v. Bozzo, 13 Bucks 181 (1963). A fortiori, the taking of his breath, voluntarily given, would not constitute such testimonial evidence as to fall within the protections of the Fifth Amendment, any more than the taking of his clothes for chemical testing or of his fingerprints would: Commonwealth v. Aljoe, 420 Pa. 198 (1966) and Commonwealth v. Statti, supra. The first question for decision, therefore, is whether this police activity constitutes such conduct as to be protected to the individual of his right to be free from unreasonable search and seizure as enunciated in Amendment Four to the United States Constitution.

It is now abundantly clear that the Fourth Amendment protections against unreasonable search and seizure are applicable to proceedings in State courts by virtue of the application of the Fourteenth Amendment to the United States Constitution as it relates to the Fourth Amendment of the United States Constitution: Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684 (1961), and Commonwealth v. Bosurgi, 411 Pa. 56 (1963). I believe that the taking of his breath does constitute a search and seizure for the purposes of application of the Fourth Amendment. The taking of his blood is clearly a search and seizure, see Schmerber v. California, supra; and Commonwealth v. Irvin, 41 D. & C. 2d 301 (1966); as is the taking of his fingerprints for

evidentiary purposes (Commonwealth v. Jefferson, 445 Pa. 1 (1971)); as well as the taking of his clothes for chemical evaluation for the same purpose: Commonwealth v. Aljoe, supra; Commonwealth v. Gordon, 431 Pa. 512 (1968). I fail to see any meaningful distinction between the taking of his clothes or his fingerprints or blood for the purpose of securing evidence against him, and the taking of his breath for the same purpose, having any significant distinction of constitutional dimension. The only case I have been able to find addressing itself directly to this question is Commonwealth v. Hartman, 47 Berks 181 (1954), in which the lower court granted a new trial in a conviction of operating a motor vehicle while under the influence of intoxicating liquor, was reversed by the Superior Court and the Superior Court then reversed on allocatur by the Supreme Court in Commonwealth v. Hartman, 383 Pa. 461 (1956). However, the lower court held that the taking of breath for the purpose of application of a breathalyzer intoximeter test was constitutionally permissible in that case. Although it is somewhat ambiguous, the lower court held that defendant was not subjected to an "unreasonable search and seizure" when his exhaled breath was given up by him while cooperating in the breathalyzer test. The court held that even though he had been so subjected, the evidence thereby obtained was not rendered inadmissible in Pennsylvania. In support of the foregoing, the Berks County court cited Commonwealth v. Agoston, 364 Pa. 464 (1950), and Commonwealth v. Greco, 166 Pa. Superior Ct. 133 (1950), both of which held that evidence secured as the result of an unconstitutional search and seizure is, notwithstanding, admissible in evidence against defendant. Although that holding no longer reflects the law by virtue of Mapp v. Ohio, supra, the inference is clear,

I feel, that the taking of his exhaled breath did constitute a search but not an unreasonable one within the context of that case.

Having found that this conduct of the police falls within the protected ambit of the Fourth Amendment of the United States Constitution, the question then becomes whether or not defendant consented to this search. The test was conducted by virtue of the implied consent contained in the relevant act of assembly. However, the act likewise recognizes that defendant may refuse to consent thereto and thereby subject himself to suspension of his operator's privileges. Evidence secured as the result of a consensual search is admissible in spite of the protections of the Fourth Amendment: Commonwealth v. Petrisko, 442 Pa. 575 (1971). However, such consent must be freely, voluntarily and knowingly given: Commonwealth v. Fox, 445 Pa. 76 (1971). The requirement of an intelligent consent implies that the subject of the search must have been aware of his rights, for an intelligent consent can only embrace the waiver of a known right. One cannot intelligently surrender that about which he does not know: Commonwealth v. Croll, 50 D. & C. 2d 485 (1970). In Escobedo v. Illinois, 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964), it was held as follows:

"We have also learned the companion lesson of history that no system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights."

Not being made aware of his right to have an examination by a doctor of his own choosing, I am unable to find that defendant could possibly make an intelligent and knowing decision to consent to this search.

It has been argued by the Commonwealth that notwithstanding that he was not advised of the right to have an examination by his own doctor, he waived this right by not demanding same. The waiver of a constitutional right, to be effective, must be intentional and knowing and may not be presumed: Commonwealth v. Clark, 443 Pa. 318 (1971); Commonwealth v. Barnette, 445 Pa. 288 (1971); Commonwealth v. Norman, 447 Pa. 217 (1971), and Commonwealth v. Jones, 447 Pa. 228 (1971). The burden of proving waiver is upon the Commonwealth: Commonwealth v. B. Abrams & Sons, Inc., 54 D. & C. 2d 169 (1971). The Commonwealth concedes this fundamental principle of law but asserts that it applies only to constitutional rights and therefrom argues that the right to an examination by his own doctor is not a constitutional right, but rather a statutory one, and, therefore, this principle of waiver does not apply. True enough, a distinction in what is required in order to find a waiver of a right as between a constitutional and a statutory one is recognized in Commonwealth v. Anderson, 441 Pa. 483 (1971). However, I believe that the Commonwealth misses the point of the case at bar in advancing that argument. The question of waiver is not one of whether or not defendant waived his right to have a doctor of his choice perform an examination upon him, but rather whether he waived his right to refuse to consent to the conduct of this search. Considering that a consent to a search requires a knowing, intelligent and voluntary act on his part and that a waiver of constitutional dimension must be intentional and knowing and will not be presumed, I fail to see how he could consent to a search and waive his constitutional right to refuse thereto without knowing all of the conditions and ramifications thereto, consequences thereof and rights which he may have appendant thereto.

I note only in passing that the test itself, as provided for in the act, does have additional constitutional dimension because if defendant should refuse, the fact of refusal would be admissible in evidence against him. Clearly, the probative value of his refusal to consent to the test would constitute an admission on his part of his guilt and, therefore, would be constitutionally protected conduct under the Fifth Amendment of the United States Constitution.

I do not believe that the odor of the rose is changed merely by calling it a search incident to an arrest. Assuming, without deciding, that this search was sufficiently contemporaneous with the arrest with relation to time and place to be considered a search incident to an arrest, I do not believe that this legal euphemism can be permitted to effect a result, the contrary of which has been dictated by the legislature. The legislature has provided in this act of assembly that a defendant may refuse to consent to this search and that under those circumstances the search shall not be conducted. It is hornbook law that in the garden variety of incident search, consent of the defendant is not required and the search may be conducted even in the face of his refusal. The legislature has proclaimed that defendant may refuse to be subjected to this type of search and I do not believe that we may thwart the will of the legislature by giving this search another name. The legislature may proclaim that there can be no searches incident to an arrest, or may set rules regarding such searches. This, I believe the legislature has done in this type of case and, as such, has determined the question of reasonableness of the search for this purpose. As such, the standards fixed by the legislature have constitutional dimension because they apply to a constitutionally protected activity, search and seizure. It has long been decided that State standards

are applied in determining the reasonableness of searches and seizures: Commonwealth v. Cockfield, 411 Pa. 71 (1963); Commonwealth v. Bosurgi, supra; Commonwealth v. Burns, 215 Pa. Superior Ct. 333 (1969); and Commonwealth v. Nicholls, 207 Pa. Superior Ct. 410 (1966). The various States may make their own rules and tests for reasonableness so long as they do not go beyond the limits embodied in the Fourth and the Fourteenth Amendments of the United States Constitution: Commonwealth v. Smyser, 205 Pa. Superior Ct. 599 (1965). In resolving the reasonableness question of a search and seizure in a State trial, the Federal constitutional standards, as expressed in the Fourth Amendment, must be respected. However, the State has the power to impose standards on searches and seizures higher than those required by the Federal Constitution: Commonwealth v. Harris, 429 Pa. 215 (1968). However, those standards of reasonableness still go to the Federal constitutional question as embodied in the Fourth Amendment of the United States Constitution and, as such, have constitutional dimension.

For the foregoing reasons, I am satisfied that the motion to suppress should be granted and the evidence thereby suppressed.