STATE OF NORTH CAROLINA v. TOMMY RAY WEST, AZER GENE WEST AND BARBARA JEAN LONG

No. 755SC812

(Filed 17 March 1976)

Criminal Law § 84; Searches and Seizures § 1— legality of search — failure to hold voir dire

The trial court in an armed robbery case did not err in failing to conduct a *voir dire* to pass upon the legality of a warrantless search of defendant's automobile where the evidence showed the search was incident to a lawful arrest and based on probable cause; furthermore, the admission over objection of certain testimony relating to property found in the car was rendered harmless by testimony of similar import admitted without objection.

APPEAL by defendants from *Fountain, Judge.* Judgments entered 24 April 1975 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 10 February 1975.

Each defendant was charged in separate indictments with the armed robbery of C. D. Price, C. E. Smith, and C. D. Howard. They pled not guilty to all charges and the State presented evidence which tended to show:

On the night of 13 March 1975, Eddie Williamson was operating a restaurant on Castle Hayne Road (Highway 117) in or near the City of Wilmington. The restaurant was located approximately five miles north of the Wrightsboro 7-11 Store operated by the victim C. D. Price. Between 10:00 and 11:30 p.m. on that night, a woman, identified by Williamson at trial as the feme defendant, entered the restaurant very briefly, then went back outside to a tan colored Cougar automobile. Considering her conduct unusual, Williamson wrote down the number of the license on the Cougar, DFJ620. He observed that three other people were in the car; the feme defendant was the driver, another woman was the front seat passenger, and two men occupied the backseat. After some three or four minutes, the car left and proceeded south in the direction of the Wrightsboro 7-11 Store.

Thereafter, shortly after midnight, two young people, a man later identified as defendant Azer Gene West and an unidentified woman, entered the Wrightsboro 7-11 Store located on the corner of Kerr Avenue and Castle Hayne Road. They walked around in the store, eyed the premises and picked up several items as they moved to the checkout counter. There they purchased several bottles of wine, a six-pack of beer, some cigarettes and a candy bar. The couple then left the store, pausing at the door as defendant Azer West looked around the outside of the building and down the Castle Hayne Road. They then walked north toward a brown and white 1970 or 1971 Mercury Cougar which was parked in a secluded spot off the shoulder of Kerr Avenue next to some pecan trees at the outer fringe of the 7-11 parking lot.

Within moments after defendant Azer West and the young woman left the store, a lone gunman came around the north corner of the building, entered the store, announced a robbery and took more than two hundred dollars from store manager Curtis Price along with money from the wallets of two cus-

tomers, C. E. Smith and C. D. Howard. The robber was armed with a black sawed-off shotgun and a small caliber pistol. He wore an orange hood, dark jacket, and white ski goggles with blue lenses. After scooping up the money, he fired the pistol into the floor, ordered everyone to lie on the floor, and fled.

When the victims got to their feet, the Cougar was gone. They called police and gave a description of the vehicle. Investigating officers later found currency scattered in the grass near the pecan trees where the Cougar had been parked. Ski goggles, identified as those worn by the gunman, were found lying in the roadway of Highway 117 about half a mile from the store.

About the time the robbery was taking place and soon thereafter, Officers Keon and Prescott of the Wilmington Police Department were on routine patrol when they received a radio call informing them of the robbery of the Wrightsboro 7-11. A second call gave them a description of a brown and white 1970 or 1971 Cougar believed to have been used in the robbery. Armed with this information, the officers began following a car answering the description at the intersection of North Fourth and Front Streets. The Cougar was proceeding on Front Street at about 25 m.p.h. When police turned on their blue light and siren, the driver of the Cougar, later identified as the feme defendant, accelerated and headed for the approach to the bridge spanning the North East Cape Fear River. The officers gave chase at speeds up to 60 m.p.h. but were unable to overtake the vehicle before it reached the bridge. Once on the bridge, their efforts to force the car over were thwarted by the rough, broken pavement of the bridge and evasive maneuvering by the driver of the Cougar who swerved back and forth, blocking off the pursuing officers. Near the center span of the bridge both vehicles slackened speed to avoid colliding with oncoming traffic. At the center of the bridge, and while over the North East Cape Fear River, officers observed the interior dome light come on inside the Cougar. They saw several passengers in the car, including two males, moving around in the backseat. Next they observed several items being thrown out of the right rear window toward the river below. While most of the items were not discernable, Officer Keon distinctly recognized coins and currency which peppered the squad car as they pursued the fleeing Cougar. He testified that he attempted to grab some of the currency blown against their windshield but it blew over the top of the car and was lost.

Once across the bridge the Cougar pulled off the road coming to a stop on the shoulder. The officers pulled in behind them. They saw the feme defendant step from behind the wheel and observed the two male defendants they had seen throwing things from the car in the backseat. In the front passenger seat was the young woman with whom defendant Azer West had been seen in the Wrightsboro 7-11 Store just moments before the robbery. Through open car doors, they saw a sawed-off shotgun, broken down into three sections, lying on the transmission hump in the backseat.

Once the occupants had been removed from the car, backup units arrived and placed the suspects in custody. Officers then began their examination of the vehicle. In the right rear floorboard where defendant Tommy West had been sitting, they found an Army fatigue jacket, concealing a packet of currency and silver certificate bearing the legend "Wrightsboro 7-11." In the left rear floorboard, where defendant Azer West had been sitting, they found a paper bag containing the beer, wine, cigarettes and candy bar defendant Azer West and the young woman had purchased from the store shortly before the robbery. A 12-gauge shotgun shell was also recovered from the rear passenger compartment.

Defendants were placed under arrest and transported to police headquarters. The Cougar, registered to the feme defendant and bearing license number DJF620, was driven back to the Wrightsboro 7-11 Store where witnesses positively identified it as the vehicle they had observed parked off the shoulder of Kerr Avenue moments before the robbery and where officers later found currency strewn on the ground.

Defendants offered no evidence.

A jury found all defendants guilty as charged. From judgments imposing active prison sentences, they appeal.

*Attorney General Edmisten, by Associate Attorney Daniel C. Oakley, for the State.*

*Samuel C. Whitt for defendant appellant Tommy Ray West.*

*Douglas A. Fox for defendant appellant Azer Gene West.*

*James K. Larrick and Goldberg and Anderson, by Frederick D. Anderson, for defendant appellant Barbara Jean Long.*

BRITT, Judge.

Defendants assign as error the failure of the trial court to grant their motions for nonsuit. We hold that the assignments are without merit and that the evidence was sufficient to survive all nonsuit motions and to sustain all charges against each of the defendants.

Defendants also assign as error the failure of the trial court to conduct a voir dire to pass upon the legality of the search of the Cougar automobile. These assignments likewise have no merit.

It will be noted that defendants did not move to suppress the testimony and they do not challenge the validity of the search, only the failure of the court to conduct a voir dire. The validity of the search can be defended on several grounds, including the fact that it was incident to a lawful arrest. *State v. Haney,* 263 N.C. 816, 140 S.E. 2d 544 (1965). A further ground is that it was based on probable cause. *State v. Ratliff,* 281 N.C. 397, 189 S.E. 2d 179 (1972).

Defendants rely upon the well established rule that ordinarily an objection to the admission in evidence of the fruits of a warrantless search is sufficient to require an inquiry by the court, in the absence of the jury, into the validity of the search. While we recognize the rule, there are many reasons why it does not avail defendants in this case.

The record fails to disclose that any of the defendants objected when Officer Tucker (R pp 86, 87) testified with respect to what he found in the car immediately after the arrest of defendants. Without objection he told of finding a broken-down shotgun, a gun shell, a paper bag containing wine, beer, etc., and U. S. currency with identification showing that it belonged to the Wrightsboro 7-11 Store. Those were the primary items found in the car.

While it is true that defendants objected to certain other testimony relating to property found in the car, its admission was rendered harmless by the testimony of similar import admitted without objection. 3 Strong, N. C. Index 2d, Criminal Law § 169.

Furthermore, under the facts in this case we do not think a voir dire would have been required even if defendants had properly objected to the challenged testimony. *See State v.*

*Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971), *cert. denied,* 414 U.S. 874, 38 L.Ed. 2d 114, 94 S.Ct. 157 (1973); *State v. Altman,* 15 N.C. App. 257, 189 S.E. 2d 793 (1972), *cert. denied,* 281 N.C. 759 (1972).

We have carefully considered the other assignments of error brought forward and argued in defendants' briefs but find them too to be without merit.

We hold that defendants received fair trials, free from prejudicial error.

No error.

Judges HEDRICK and MARTIN concur.